**In re Francisco P. PACANA, Debtor.**

**Francisco P. PACANA, Appellant,**

v.

**Marcalane S. PACANA–SILER, Appellee.**

**B.A.P. No. NC–89–1356 VAsJ.**

**Bankruptcy No. 588–06195–WCMOR.**

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Sept. 21, 1989.

Decided March 29, 1991.

Richard B. McLaughlin, Salinas, Cal., for appellant.

Robert P. Herendeen, Salinas, Cal., for appellee.

Before VOLINN, ASHLAND and JONES, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

Appellant, a Chapter 13[1] debtor, challenges an order that granted his former wife relief from the § 362 stay to collect child support arrearages after confirmation of his plan which by its terms provided for payment on her claim. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 30, 1988, Francisco Pacana filed a petition and plan under Chapter 13. His schedules show a total unsecured indebtedness of $34,500.00 which includes a $13,900 debt to his ex-wife, Marcalane S. Pacana–Siler, for child support arrearages. The remaining debts result from use of credit cards and consumer loans. The Chapter 13 plan is allegedly based on classification of Ms. Siler's debt as "priority," and provided for payment to her, but without any provision concerning the timing and amount of disbursements to be paid on the debt. The debtor's plan provides for a 14 percent payment to unsecured creditors. In the "Plan Computation" filed with the plan the following is stated:

### PLAN COMPUTATION

| | |
|---|---|
| PRIORITY NONE | = NONE |
| SECURED | = 9,720.00 |
| INTEREST ON SECURED | = 2,000.00 |
| 14 % OF UNSECURED | = 5,000.00 |
| ATTORNEY FEE | = 700.00 |
| Subtotal = | 17,420.00 |
| TRUSTEE FEE | = 1,750.00 |
| Total = | 19,170.00 |

1. Section and chapter references refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, unless otherwise specified.

We note that the plan does not provide for payment of a priority claim, which appears at odds with the alleged classification of Ms. Siler's debt as priority. Her debt is included in the unsecured creditors' 14 percent calculation as indicated above.

On February 13, 1989, the plan was confirmed without appearance or objection by Ms. Siler. However, on the date of confirmation, there was outstanding an unresolved application, filed by Ms. Siler on or about January 20, seeking relief from stay to enforce the child support debt. After a hearing on March 3, 1989, the court granted relief from stay "to the extent that in addition to what is paid to moving party on her priority claim in the Chapter 13 she may collect an additional $250 per month from the debtor to be applied against the arrearages. This additional $250 may be collected upon immediately by agreement with or by levy upon the debtor's wages or other moneys due him." The court entered its written order on March 16, 1989. Mr. Pacana timely filed a notice of appeal. Ms. Siler did not cross-appeal and has taken the position in her appellee's brief and in argument to the Panel that the order of the trial court should be affirmed.

Mr. Pacana contends that the court's order renders his plan infeasible because he will have insufficient net income to pay living expenses after making plan payments. He contends that his plan by implication provides for 100 percent payment to Ms. Siler simply by designating her as a priority claimant, although, as stated, the plan contains no provision whatsoever for such payment. As indicated above she appears to have been treated as a member of the 14 percent unsecured creditor class.

## ISSUE PRESENTED AND STANDARD OF REVIEW

■ Mr. Pacana appeals from an order granting Ms. Siler partial relief from stay to enforce her claim for child support payments on a limited monthly basis. We question, however, whether the automatic stay or the plan can affect at all her efforts to enforce that claim. These are legal issues subject to *de novo* review. *See, e.g., Ragsdale v. Haller,* 780 F.2d 794 (9th Cir. 1986).

## DISCUSSION

### A. Statutory Framework

■ The debtor's brief states that both the Code and the plan treat his child support obligation[2] as a priority debt under § 507, which will be paid in full. We see nothing in § 507 that would apply to child support obligations. As discussed above, the payment provisions of the plan itself do not provide for any priority payments, either to appellee or otherwise.[3] In any event, whether child support obligations are treated as priority claims or ordinary unsecured claims does not affect our analysis.

Section 1322 provides in pertinent part:

(a) The plan shall—

. . . . .

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title. . . .

(b) . . . the plan may—

. . . . .

(2) modify the rights . . . of holders of unsecured claims . . . ;

(3) provide for the curing or waiving of any default. . . .

Thus § 1322, standing alone, arguably permits a plan to provide for the deferred payment of a debtor's child support obligation.

---

**2.** The debtor's child support obligation referred to herein is the outstanding arrearage of $13,900, which appears to be the debt at issue in this appeal.

**3.** Since there is no basis to classify appellee's claim separately from *other* unsecured claims, § 1322(a)(3) would prohibit the plan from providing for priority payments to appellee.

Section 1327(a) provides for the consequences to creditors on confirmation stating that:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

This section, if applicable, also appears broad enough to bind the appellant to the provisions of the plan. Finally, § 1327(c) provides that after confirmation, the debtor's property is free from claims provided for by the plan. The pertinent provisions of § 1327 provide:

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

■ However, § 362(b)(2) specifically excepts from the automatic stay "the collection of alimony, maintenance, or support from property that is not property of the estate...." *See In re Stringer*, 847 F.2d 549 (9th Cir.1988). Since under § 1327(b), "the confirmation of a plan vests all of property of the estate in the debtor," [4] the

effect of § 362(b)(2) is to except from the automatic stay any efforts to collect child support obligations owed by the debtor. In any event, while most ordinary debts are subject to discharge under § 1328, child support obligations are specifically excepted from discharge under §§ 1328(a)(2) and 523(a)(5),[5] and therefore from the post-discharge injunction of § 524(a)(2).

■ Thus, Congress by virtue of § 362(b)(2) specifically excepted child support obligations from the effect of the bankruptcy stay while the case is pending, and through §§ 1328(a)(2) and 523(a)(5), it specifically excepted child support obligations from the effect of confirmation in the Chapter 13 bankruptcy case. These provisions, read together, are consistent and manifest a legislative intent that child support obligations be excepted from the broad reach of §§ 1322 and 1327, and therefore from the effects of a Chapter 13 plan, as well as the post-confirmation automatic stay.

### B. Case Analysis

Case law on this issue ranges from excluding support debts from treatment under a Chapter 13 plan through various forms of inclusion resulting in distribution under the plan of support payments. The Fourth Circuit has adopted the strict exclusionary view, holding that past due child

---

**4.** We note that § 1306(a)(2) provides that:

(a) Property of the estate includes ...

. . . . .

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

This could be read either as an exception to § 1327(b), in which case wages would remain property of the estate, *see, e.g., In re Brilz,* 96 B.R. 308 (Bankr.D.Mont.1989); *Riddle v. Aneiro (In re Aneiro),* 72 B.R. 424 (Bankr.S.D.Cal.1987), or as consistent with § 1327(b), in which case wages would be among the items of property of the estate which, upon plan confirmation, revert to the debtor and cease to be property of the estate, *see, e.g., Mason v. Williams (In re Mason),* 51 B.R. 548 (D.Or.1985). We do not decide that issue. It is not necessary to the disposition of this appeal, since the essential issue before us is

whether Chapter 13 can provide a safe harbor from the pursuit of the support debts which cannot be discharged under sections 523(a)(5) and 1328(a)(2).

**5.** Section 1328(a)(2) excepts from discharge "any debt ... of the kind specified in section 523(a)(5) of this title." Section 523 provides in pertinent part that

(a) A discharge under section ... 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement....

support obligations cannot be included in a Chapter 13 plan. *See Caswell v. Lang (In re Caswell)*, 757 F.2d 608, 610–11 (4th Cir. 1985). The court reasoned that a federal tribunal should not interfere with a state court decision as to how and when a child support debt is to be paid as these are areas of particular state concern. *Id.* at 610. The court stated that:

> The Supreme Court has long favored state court retention of exclusive control over the collection of child support. *See In re Burrus*, 136 U.S. 586, 593–594, 10 S.Ct. 850, 852–853, 34 L.Ed. 1500 [sic] (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belong to the laws of the States and not to the laws of the United States.").

757 F.2d at 610 (additional citations omitted).[6] The court further stated that:

> [I]t would result in great injustice to require children to await a bankruptcy court's confirmation of a debtor's chapter 13 plan before permitting them to enforce their state court-determined right to collect past due support payments. The bankruptcy code may not be used to deprive dependents, even if only temporarily, of the necessities of life.

*Id.* It therefore upheld the rejection by the bankruptcy and district courts of a Chapter 13 plan that provided for 100% payment to an unsecured class consisting solely of the debt for past due child support and for 25% payment to the other class of unsecured creditors. *Id. See also In re Garrison*, 5 B.R. 256, 260–261 (Bankr.E.D.Mich. *en banc*, 1980) holding that the section 362 stay did not enjoin enforcement of support obligations. *See also Griffin v. Griffin (In re Griffin)*, 39 B.R. 112, 114 (Bankr.W. D.Wash.1984), where the court in ruling on the dischargeability of attorney fees awarded in a dissolution proceeding, stated: "it would be inappropriate for a bankruptcy court to venture into an area so traditionally the province of state courts. Embarking upon such a course would result in

two different court systems treating problems of broken families on a continuing basis, with resulting confusion, forum shopping, and, inevitably, exacerbation of a notoriously problem-ridden area of litigation."

*McCray v. McCray (In re McCray)*, 62 B.R. 11, 12 (Bankr.D.Colo.1986), followed *Caswell* in holding that a debt for past due child support may not be included in a Chapter 13 plan. Consequently, in *McCray*, the court granted debtor's former spouse relief from the automatic stay to permit her to continue collection proceedings on her judgment against the debtor for past due child support.

*Caswell* has been criticized as too narrowly construing the power of bankruptcy courts to deal with claims against the debtor. *See 5 Collier on Bankruptcy* ¶ 1322.14[1] (15th ed. 1989) (noting that the creditor spouse may welcome payment through the plan and urging that it "may be completely appropriate in some cases where the debtor is not using the bankruptcy case as a device for evading familial responsibilities"); 3 *Norton Bankr.L. & Prac.* § 76.02 (W.L. Norton, Jr. 1987).

Other courts have approved a separate classification for child support debts that pays 100%, even though other classes of unsecured claims receive less than 100%. *E.g., In re Storberg*, 94 B.R. 144, 147–48 (Bankr.D.Minn.1988); *In re Haag*, 3 B.R. 649, 651 (Bankr.D.Or.1980); *In re Curtis*, 2 B.R. 43, 44 (Bankr.W.D.Mo.1979). However, other courts have held that the debtor may not accord separate classification and dissimilar treatment to child support debts. *In re Stewart*, 52 B.R. 281, 282–83 (Bankr. W.D.N.Y.1985). The court reasoned that the sole express exception to the ban on special treatment of certain creditors within a class was in § 1322(a)(3) concerning consumer debts on which a co-debtor exists.

---

6. *See also In re Mac Donald*, 755 F.2d 715, 717 (9th Cir.1985), which ruled in a Chapter 7 case that relief from stay applications should be liberally granted in family support litigation so that bankruptcy courts may "avoid incursions into family law matters."

Another court denied confirmation of Chapter 13 plans that included child support debts because the obligees' written consents were not obtained. *In re Davidson*, 72 B.R. 384, 390–91 (Bankr.D.Colo. 1987). The court held that it lacked power to alter a support-related debt as imposed by a state court. *Id.* at 386. Further, it held that if the debtor attempted to handle the debt outside of the plan, an unpaid support creditor would be entitled, after confirmation, to garnish the debtor's wages remaining after his payment of plan-related obligations. *Id.* at 390. Thus, a plan that includes child support debts would be unworkable absent written consent by such creditor. *Id.* at 390; The court in *Davidson* acknowledged that a debtor who cannot obtain consent from the ex-spouse would be forced to resort to Chapter 7. 72 B.R. at 391. *See also Hamilton v. Lomas Mortgage U.S.A. (In re Hamilton)*, 100 B.R. 385, 388–89 (N.D.Ill.1989) (holding that despite § 1327, a creditor is not bound by the plan when he had sought relief from stay before confirmation, citing § 1329 which allows post-confirmation modification of the plan).

The case of *In re Warner*, 115 B.R. 233, (Bankr.C.D.Cal.1989) considered a plan proposing to deal with a child support obligation and, on objection to confirmation, dismissed the case. The court concluded that there was no basis in the Bankruptcy Code for discrimination between support arrearage and the debtor's other unsecured obligations. In the course of a broadly ranging discussion, the court stated:

> Confirming Debtor's proposed plan would entirely divest the state court of any jurisdiction to enforce payments of child support arrearages unless and until the chapter 13 case were to be dismissed.
>
> . . . .
>
> Filing a bankruptcy case to defraud a former spouse or to evade the duty to support dependent children has long been recognized as an abuse of the bankruptcy process. (Citations omitted.)

*Id.* at 242.

The court after reviewing various authorities, including some of those discussed above, stated:

> Minimal payout to unsecured creditors cannot be justified if it can only be achieved by having bankruptcy courts divest the state courts of their jurisdiction over child support enforcement. Pulling these issues into bankruptcy court means the substitution of the judgment of the bankruptcy court for that of the family law court on the key question of how much of the debtor's take-home pay should be used to support the former family. Because of the policies favoring state resolution of support issues, bankruptcy court intervention into this area can be justified only if the benefits to be achieved under the chapter 13 plan are significant enough substantially to outweigh the detrimental impact of the intervention.

*Id.* at 244.

We recognize that various cases cited above are reacting constructively to the economic problem of a debtor who, unable to meet support or alimony obligations, turns to Chapter 13. However, the Code's treatment of child support obligations manifests Congressional intent that while a Chapter 13 plan may alter or delay the enforcement of ordinary unsecured creditors' claims, child support claimants need not wait in line with such creditors, but rather may proceed against the debtor without the hindrance of either automatic stay or discharge.

Our analysis has attempted to coordinate or reconcile the provisions of § 362(b)(2) (excluding from the stay collection of alimony or support from non-estate property); § 524(a)(2) (permanent injunction against collection of debts discharged); § 1306(a)(2) (including the debtor's post-petition wages in the estate); § 1327(b) (providing that on confirmation all property of the estate vests in the debtor); § 1327(a) (making confirmation binding on each creditor); and § 1328(a)(2) (precluding a Chapter 13 discharge for debts related to alimony or support) all in the light of section 523(a)(5)

(preserving spousal and family support debts from discharge).

The Supreme Court in an analogous statutory context stated:

> Insofar as marriage is within temporal control, the States lay on the guiding hand. "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus,* 136 US 586, 593–594, 34 L Ed 500, 10 S Ct 850 [852–53] (1890). Federal courts repeatedly have declined to assert jurisdiction over divorces that presented no federal question. *See e.g., Ohio ex rel. Popovici v Agler,* 280 US 379, 74 L Ed 489, 50 S Ct 154 (1930). On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has "positively required by direct enactment" that state law be pre-empted. *Wetmore v. Markoe,* 196 US 68, 77, 49 L Ed 390, 25 S Ct 172 [175] (1904). A mere conflict in words is not sufficient. State family and family-property law must do "major damage" to "clear and substantial" federal interests before the Supremacy Clause will demand that state law be overridden. *United States v. Yazell,* 382 U.S. 341, 352, 15 L.Ed 2d 404, 86 S.Ct. 500 [506] (1966).

*Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 811, 59 L.Ed.2d 1, 10 (1979). In the case before us, specific provisions of the Bankruptcy Code relative to spousal support require rather than preclude application of state law.

## CONCLUSION

■ It is our view that the foregoing sections of the Code demonstrate the intention of Congress that collection of debts for child support or alimony should not be inhibited any more under Chapter 13 than under Chapter 7. While economic problems all too often attend a foundered marriage, complete resolution thereof is not within the purview of a federal bankruptcy court. Obligations relating to support and alimony, intractable though they may be, are insulated from mandatory inclusion in a Chapter 13 plan by virtue of express provisions of the Bankruptcy Code.

The order of the court below terminating the stay is AFFIRMED.

ASHLAND, Bankruptcy Judge, dissenting:

I would reverse the order granting Ms Pacana–Siler's motion for relief from the automatic stay and I therefore respectfully dissent from the majority opinion. The facts and issues as I see them are as follows:

## FACTS

The debtor filed his Chapter 13 petition and schedules on November 30, 1988. In the schedules the debtor listed child support arrearages to his former spouse in the amount of $13,900. The obligation to the former spouse was embodied in a state court judgment filed September 12, 1988. Other than that judgment, there was no requirement for the debtor to make ongoing child support payments. The debtor's Chapter 13 plan was confirmed without objection on February 13, 1989.

The debtor's schedules showed total unsecured indebtedness of $34,500, including the debt to his former spouse. The plan provided for secured claims totaling $9,720 and a payment to unsecured creditors of 14 percent. Subject to adjustment depending upon the amount of claims and their allowance, the plan and the order confirming the plan called for payments of $500 per month for 36 months. On December 5, 1988 the court issued an order to the debtor's employer, the U.S. Army, to pay $500 per month of the debtor's wages to the trustee. The plan did not provide for payment over a period longer than three years as permitted by 11 U.S.C. § 1322(c).

Ms Pacana–Siler filed a motion for relief from the automatic stay on January 20, 1989. At the post-confirmation hearing on the motion on March 3, 1989, the court modified the automatic stay to permit Ms

Pacana–Siler to garnish $250 per month from the debtor's wages, or any other property, in addition to the sums disbursed through the Chapter 13 plan. This appeal followed. The bankruptcy court entered a stay of its order pending appeal.

## ISSUE

Whether the bankruptcy court erred in granting the debtor's former spouse partial relief from the automatic stay in order to allow her to collect child support arrearages.

## STANDARD OF REVIEW

An order lifting the automatic stay is reviewed for abuse of discretion. *In re Can–Alta Properties, Ltd.*, 87 B.R. 89, 91 (9th Cir. BAP 1988) (citing *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986)). In applying the abuse of discretion standard, the reviewing court should reverse the trial court only if the trial court rested its conclusions on clearly erroneous factual findings or an incorrect legal standard. *SEC v. Carter Hawley Hale Stores, Inc.*, 760 F.2d 945, 947 (9th Cir.1985). Legal issues are subject to review *de novo*. *Crocker Nat'l Bank v. American Mariner Indus., Inc. (In re American Mariner Indus., Inc.)*, 734 F.2d 426, 429 (9th Cir.1984).

## DISCUSSION

The debtor contends that the court's order renders his plan infeasible because he will have insufficient net income to pay living expenses after making plan payments. He contends in the briefs that the plan by implication provides 100 percent payment to his former spouse because she is designated as a priority claimant. No such provision was made. A child support obligation is not a priority debt under § 507(a).

Ms Pacana–Siler contends that child support obligations may not be included in a Chapter 13 plan. As a result, she asserts that the bankruptcy court properly granted her relief from stay which allowed her to proceed outside the plan to satisfy her claim for child support arrearages.

The trial judge expressed displeasure with the debtor for having arrearages in child support and then seeking to pay them over time through a Chapter 13 plan. The court, in its order, provided that in addition to what was paid through the plan to the debtor's former spouse on her claim she could collect an additional $250 a month from the debtor to be applied against the arrearages. The trial judge referred to the claim as a priority claim.

We analyze the scheme provided for by Congress in the Bankruptcy Code despite any displeasure we might have with the result. The Ninth Circuit has held that an action for modification of a child support order is not within the exemption from automatic stay in bankruptcy for "collection of alimony, maintenance or support" in a Chapter 7 context under § 362(b)(2). *In re Stringer*, 847 F.2d 549 (9th Cir.1988). We know that prior to the recent amendment of § 1328(a), a restitution obligation was dischargeable in a Chapter 13, *Pennsylvania Department of Public Welfare v. Davenport*, —— U.S. ——, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), despite the view of others that such an obligation was not dischargeable. *See In re Heincy*, 858 F.2d 548 (9th Cir.1988).

### Code Analysis

If an individual meets the qualification requirements of § 109(e), that individual may file a petition under Chapter 13. Section 1321 provides that the debtor must file a plan. The plan must include some things and may include others.

Under § 1322(a) the plan must provide for the submission of all or a portion of future earnings or other future income necessary for execution of the plan, payment in full of claims entitled to priority under § 507, and, if claims are classified, the same treatment for each claim within a particular class. In this case, the former spouse is treated as an unsecured creditor. The order relieving the creditor of the stay has the effect of permitting unequal treatment.

Under § 1322(b)(2), the debtor in the plan may modify the rights of unsecured claims.

Section 1322(b)(3) allows the plan to provide for the curing or waiving of any default. Section 1322(c) provides that a plan may not extend for a period of longer than three years unless the court, for cause, approves a longer period not to exceed five years.

Although creditors do not vote on the plan in a Chapter 13 a party in interest may object to confirmation of the plan as provided for in § 1324. Confirmation standards are defined in § 1325. Section 1325(a)(3) requires that a plan be proposed in good faith. Good faith has been discussed in a number of contexts including the proposal of a low percentage plan. *See In re Goeb*, 675 F.2d 1386 (9th Cir.1982).

If the trustee or the holder of an allowed unsecured claim objects to confirmation the court may not approve the plan unless, among other things, the plan provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment under the plan is due will be applied to make payments under the plan. *See* 11 U.S.C. § 1325(b)(1)(B). Significantly, at any time after confirmation but before completion of payments under the plan the trustee or the holder of an allowed unsecured claim may request modification to increase payments on claims of a particular class provided for by the plan. No objection to confirmation was made in this case but the trustee or the creditor are still afforded the benefits of § 1329(a)(1). Failure to object to confirmation precludes a creditor from asserting after confirmation, any other interests than those provided for in the confirmed plan. *In re Evans*, 30 B.R. 530 (9th Cir. BAP 1983).

Unless the plan or the order confirming the plan provides otherwise, confirmation vests all of the property of the estate in the debtor. *See* 11 U.S.C. § 1327(b). In addition to property specified in § 541, under § 1306(a), property of the estate in a Chapter 13 includes earnings from services performed by the debtor after the case has commenced but before the case is closed, in other words in this case, the debtor's army pay. Unlike a Chapter 7, § 362(b)(2) in a Chapter 13 does not permit collection of alimony, maintenance, or support from the debtor's wages because the wages are property of the estate and the exception of § 362(b)(2) applies to property that is not property of the estate. The debtor's wages after confirmation of a Chapter 13 plan are property of the estate.

Upon completion of all payments under the plan the debtor receives a discharge from all debts with certain exceptions noted in § 1328(a), one of which is an obligation for alimony and child support. In other words, the creditor in this case has a claim which ultimately must be paid. Under § 1327(a), confirmation of the plan is binding on the creditor whether the creditor has objected to, accepted, or rejected the plan.

*Case Analysis*

Courts have typically adopted three approaches to the treatment of child support arrearages in Chapter 13 cases. The first approach prohibits debtors from including payment of child support under the plan. *See Caswell v. Lang*, 757 F.2d 608, 610 (4th Cir.1985); *In re McCray*, 62 B.R. 11, 12 (Bkrtcy.D.Colo.1986); *In re Nelson*, 85 B.R. 731, 732 (Bkrtcy.E.D.Va.1988). As enunciated by the court in *Caswell*, past due child support cannot go through a plan because this "would invite a federal bankruptcy court to alter or modify a state court decision...." *Caswell* at 610. As a result, the court in *Caswell* denied confirmation of a plan that provided 100% payment for the child support claim and 25% payment on all other unsecured claims.

The second approach allows for the provision of 100% payment of child support outside of the Chapter 13 plan and a low payout to all other unsecured creditors under the plan. *See In re Haag*, 3 B.R. 649 (Bkrtcy.D.Or.1980). The bankruptcy court in *Haag* confirmed a Chapter 13 plan which provided for 100% payment of past due child support outside of the plan and only 25% payment to all other unsecured creditors through the plan. *Haag* at 651.

Finally, courts allow a Chapter 13 plan to provide for full payment of child support arrearages and partial payment to all other

**28**

unsecured creditors. For example, in *In re Davidson*, 72 B.R. 384, 387 (Bkrtcy.D.Colo. 1987), the court held that a plan which provides for 100% payment of child support arrearages and 25% payment to the unsecured creditors, did not unfairly discriminate against those unsecured creditors. However, such a plan would only be confirmable if the former spouse or the state, as assignee of such child support claim, expressly consented to the plan. *Davidson* at 389.

In its examination of the child support issue, the court in *In re Warner*, 115 B.R. 233, 239 (Bkrtcy.C.D.Cal.1989), found that nothing in the code specifically entitles nondischargeable child support claims to any priority over other unsecured claims. "[O]nly the most compelling of circumstances could justify any discrimination between unsecured claims otherwise equal in priority in payment under the Bankruptcy Code." 115 B.R. at 244. Moreover, nondischargeability does not guarantee payment in full; rather it merely establishes "the continuing liability of the debtors for repayment of any deficiencies remaining after discharge...." *Id.* at 239.

Section 1322(b)(1) provides that a plan may designate a class or classes of unsecured claims, but may not discriminate unfairly against any class so designated. In granting partial relief from the automatic stay and allowing the garnishment of the debtor's wages, the court erroneously gave preferential treatment to Ms Pacana–Siler's non-dischargeable claim. This preferential treatment is likely to have a detrimental effect on the remaining unsecured claims due to the limited funds available for plan payment. Such treatment is unfairly discriminatory. Consequently, the bankruptcy court abused its discretion in granting Ms Pacana–Siler partial relief from the automatic stay enabling her to go outside the plan and collect additional funds on her child support claim.

## CONCLUSION

The bankruptcy court abused its discretion in finding that Ms Pacana–Siler was entitled to partial relief from the automatic stay. Therefore, I would reverse the order granting the partial relief from stay and the garnishment of the debtor's wages.