In re Charles M. **LACKEY** and Jessica K. Lackey, Debtors.

Libby L. Lackey **LAWSON**, Plaintiff,

v.

Charles M. **LACKEY**, Defendant.

Bankruptcy No. 92–40788.
Adv. No. 92–40026.

United States Bankruptcy Court, N.D. Alabama.

Dec. 18, 1992.

Tazewell T. Shepard, Huntsville, AL, for plaintiff.

Thomas M. Semmes, Anniston, AL, for defendant.

## MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

This case comes before the Court on cross-motions for summary judgment.[1] The parties agree that there are no genuine issues of material facts and that a judgment should be entered for one party based upon the applicable law. Plaintiff seeks to establish that her allowed general unsecured claim of $29,189.80 for child support that accrued prepetition should be declared nondischargeable pursuant to the provisions of 11 U.S.C. § 1328(a)(2) and 11 U.S.C. § 523(a)(5). Defendant does not contest this portion of the complaint and has confessed that a judgment may be entered on this ground.

Next, plaintiff seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) on the ground that the plan confirmed[2] in the defendant's pending chapter 13 bankruptcy case, Bankruptcy No. 92–40788, does not adequately provide for plaintiff's claim. Ultimately, plaintiff seeks permission to pursue collection of the prepetition child support arrearage in state court. Defendant contends that this Court's ruling, which confirmed the plan in the chapter 13 case over plaintiff's objection, precludes plaintiff from asserting this ground. Next, defendant asserts that plaintiff is not eligible for relief from the automatic stay as plaintiff does not have a secured claim. Finally, defendant asserts that the automatic stay should remain in effect because the confirmed plan adequately provides for

---

1. The co-debtor, Jessica K. Lackey, has been dismissed as a defendant in this adversary proceeding.

2. This Court confirmed the defendant's plan on August 20, 1992.

plaintiff's claim by paying approximately 9% of her allowed claim.

Defendant's plan was confirmed over the objection of plaintiff that the plan did not pay her nondischargeable claim in full. Plaintiff did not appeal the order confirming the plan. The plan provides a special class for plaintiff's claim with payment prior to other general unsecured claims. The total allowed unsecured claims in the main case is $30,772.43 with all but $1,582.63 of this amount being plaintiff's claim. The plan payments are estimated to pay approximately 9% of plaintiff's allowed claim; consequently, no payments will be distributed to the other general unsecured claims.[3] The plan also provides for direct payment by the debtor on a long-term debt secured by a first mortgage on defendant's primary residence. The plan further provides for distributions by the trustee to priority claims, then to GMAC, holding a claim, secured by a vehicle, allowed in the amount of $2,024.13, and to Tandy Credit Corporation on a claim secured by a computer valued at $1,000.00. Under the plan, the defendant shall pay $60.00 each two weeks to the trustee for exactly 130 such payments beginning the date of the order confirming the plan.[4]

## I.

■■■ Defendant argues that the issues raised in this adversary proceeding are the same as those issues raised in the objection to confirmation and that plaintiff is, therefore, now precluded from reasserting those arguments by the prior adjudication. A confirmed plan binds creditors under 11 U.S.C. § 1327(a) and under issue and claim preclusion. The Ninth Circuit recently reaffirmed the general rule as follows:

"The Ninth Circuit BAP has held that the language of section 1327(a) binds the creditor to the provisions of the plan whether or not the creditor has objected to, accepted or rejected the plan. *Ana-heim Sav. & Loan Ass'n v. Evans (In re Evans)*, 30 B.R. 530, 531 (Bankr. 9th Cir. [BAP] 1983). 'An order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing.' *Id. Evans* further stated that 'issues of adequate protection, lack of equity, and necessity for a successful rehabilitation of the Chapter 13 debtor [are] all res judicata as of the confirmation of the plan.' Id."

*Lomas Mortgage U.S.A. v. Wiese (In re Wiese)*, 980 F.2d 1279, 1284, (9th Cir.1992). The issues presented at the confirmation hearing and in this proceeding are identical and, therefore, res judicata is applicable. See, e.g., *Eubanks v. F.D.I.C. (In re Eubanks)*, 977 F.2d 166, 23 BCD 1015 (5th Cir.1992); *Sun Finance Co. v. Howard (In re Howard)*, 972 F.2d 639, 640 (5th Cir. 1992); *Cone v. Davies (In re Davies)*, 143 B.R. 747, 749 (Bankr.D.Idaho 1992); *In re Algee*, 142 B.R. 576 (Bankr.D.D.C.1992); *United States v. Smith (In re Smith)*, 142 B.R. 862, 864–65 (Bankr.E.D.Ark.1992); *In re Walker*, 128 B.R. 465 (Bankr.D.Idaho 1991). See also 5 L. King, Collier on Bankruptcy, ¶ 1327.01[1] (15th ed. 1992) (discussing the effect of section 1327(a)).

Plaintiff is not aided by the holdings of *Sun Finance Co. v. Howard (In re Howard)*, 972 F.2d 639, 640 (5th Cir.1992) (wherein the Chapter 13 plan attempted to reduce a lien holder's claim without first objecting to such claim) or *In re Thomas*, 883 F.2d 991 (11th Cir.1989) (wherein the Eleventh Circuit found that the Chapter 13 plan failed to provide for a lien holder's claim). Both decisions carve out exceptions to the general rule that are not present in this case. The plaintiff has a general, unsecured claim, and the plan provides for such claim by payment prior to any payment to any other holder of a general, unsecured claim.

---

3. There was no objection by the standing trustee or any other party in interest of unfair discrimination pursuant to 11 U.S.C. § 1322(b)(1).

4. The debtor began making payments under the proposed plan the month after the plan was filed in March, 1992. At the time of the confirmation hearing on August 19, 1992, the defendant had made all required payments under the proposed plan and the trustee had $540.00 on hand for an initial distribution following confirmation.

## II.

■ Regardless of this Court's holding that relief from the automatic stay is precluded by confirmation of the plan, the Court considers plaintiff's remaining claims because of the importance of the issues and the conflicting authority. The next issue to be determined is the application of the automatic stay under 11 U.S.C. § 362(a). The plaintiff is enjoined from commencing or continuing any action, including the enforcement or collection of the prepetition child support arrearage, and is further enjoined from enforcing the collection of that arrearage against property of the estate. 11 U.S.C. § 362(a)(1), (2), and (6). This injunction remains in effect until a discharge is granted or the case is dismissed. 11 U.S.C. § 362(c)(2). The defendant's estate includes all property owned by the debtors at the time of filing, 11 U.S.C. § 541, together with all wages for services performed while the case is pending and any property acquired while the plan is in effect. 11 U.S.C. § 1306(a)(2). Plaintiff seeks to fit within the exception to the automatic stay as set forth in 11 U.S.C. § 362(b)(2).[5] However, this exception is only for collection from property that is not property of the estate. In the case at hand, there is no such property. Section 1327(b) does provide that confirmation of a plan vests all of the property of the estate in the debtor. However, this subsection is limited to "except as otherwise provided in the plan or the order confirming the plan." The order confirming the plan in this case provides in paragraph 6 that: "The property of the estate shall not vest in the debtor(s) until a discharge is granted under said Chapter 13 or this case is dismissed out of Court." Cf. *Tome v. Baer (In re Tome)*, 113 B.R. 626, 632–633 and 633 n. 7 (Bankr. C.D.Cal.1990) (wherein the court explained that "The postponement of the revesting of the property of the estate in the debtor until the debtor's discharge or the closing of the case is a standard part of the printed chapter 13 plan form that is mandatory for chapter 13 cases filed in Los Angeles." In this Court, the postponement language is set forth as a standard part of the confirmation order). Consequently, there is no property available for the collection of the child support that is not property of the estate. *Farmer v. Cole (In re Farmer)*, 150 B.R. 68 (Bankr.N.D.Ala.1991). See *In re Walker*, 67 B.R. 811 (Bankr.C.D.Cal. 1986); *In re Denn*, 37 B.R. 33, 36 (Bankr. D.Minn.1983).

## III.

### A.

■ Defendant asserts that plaintiff has no standing to seek relief from the automatic stay as plaintiff holds a general unsecured claim. However, defendant cites no authority in support of this position. Plaintiff cites numerous cases in which the stay has been modified or lifted to permit a spouse to adjudicate support issues in state court, and in some cases to enforce support against the debtor's non-estate property. *Laughlin v. IRS*, 98 B.R. 494 (D.Neb.1989). *Caswell v. Lang*, 757 F.2d. 608 (4th Cir. 1985); *Pacana v. Pacana (In re Pacana)*, 125 B.R. 19 (9th Cir. BAP 1991). This argument is rejected; plaintiff has standing to pursue this claim.

### B.

Because the automatic stay applies to plaintiff's collection of prepetition child support arrearage, the Court must determine whether the plan confirmed in the chapter 13 case adequately provides for plaintiff's claim. If not, the automatic stay

---

**5.** 11 U.S.C. § 362(b)(2) provides in pertinent part that "The filing of a petition under section 301, [or] 302 ... of this title ... does not operate as a stay—

.   .   .   .   .

(2) under subsection (a) of this section, of the collection of alimony, maintenance, or support from property that is not property of the estate".

should be lifted to permit plaintiff to pursue her remedies in state court. Cf. *In re Thomas*, 883 F.2d 991 (11th Cir.1989). Unfortunately, there is conflicting authority on whether a chapter 13 plan may provide for prepetition child support arrearages. Even if it is permitted, another issue arises as to whether the federal court should abstain and leave the issue of domestic relations and enforcement of child support solely to the state courts. Finally, if the prepetition child support arrearage may be provided in the chapter 13 plan, may the debtor propose a priority treatment for this claim, causing a detriment to other general unsecured claim holders?

### 1.

■ *Caswell v. Lang (In re Caswell)*, 757 F.2d 608 (4th Cir.1985) deferred to the state courts in holding that prepetition child support arrearages cannot be included and paid through a chapter 13 plan. The Bankruptcy Appellate Panel in *Pacana v. Pacana (In re Pacana)*, 125 B.R. 19 (Bankr. 9th Cir.1991) affirmed the bankruptcy court's decision to lift the stay to permit the collection of child support arrearage, even though a provision for payment was included in the chapter 13 plan.

The better view is that the chapter 13 plan should be permitted to provide for child support arrearage. The Court in *Mickelson v. Leser (In re Leser)*, 939 F.2d 669 (8th Cir.1991) upheld a ruling that confirmed a chapter 13 plan which provided for 100% payment of child support arrearage and a minimal payment to other general unsecured claim holders. See, *In re Raboin*, 135 B.R. 682 (Bankr.D.Kan.1991); *In re Haag*, 3 B.R. 649 (Bank.D.Or.1980).

### 2.

■ If the support arrearage may be included in the chapter 13 plan, should the federal court still abstain from exercising jurisdiction in deference to comity with state courts? *Caswell v. Lang*, 757 F.2d 608 (4th Cir.1985) supported deference. *Carver v. Carver*, 954 F.2d 1573 (11th Cir. 1992) acknowledged a violation of the automatic stay when a debtor's ex-wife continued to pursue a contempt hearing after the petition was filed. Nevertheless, the Eleventh Circuit indicated that the bankruptcy court should have ignored the violation and should not have awarded any damages to the debtor. *Carver* held that domestic relations law is a special category for determination by state courts. It further stated that the bankruptcy court should avoid being involved in this area with very small exceptions.[6] Based on the facts before it, the *Carver* court directed that abstention was required. Because *Carver* hinges upon the finding that domestic relations law is a special category and an exception to federal jurisdiction, it has been effectively overruled or substantially limited by *Ankenbrandt v. Richards*, —— U.S. ——, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992).

■ In *Ankenbrandt*, the Supreme Court held that abstention should rarely be invoked, because the domestic relations exception from federal jurisdiction is limited to the issuance of a decree affecting the domestic relationship (granting or modifying a divorce), awarding child custody, and fixing alimony and child support.[7] This federal jurisdictional exception does not encompass enforcement of such decrees. —— U.S. at ——, 112 S.Ct. at 2214–16, 119 L.Ed.2d at 482–83. Consequently, enforcement of child support arrearage against a debtor is subject to federal jurisdiction, 28 U.S.C. § 1334, and it is a core proceeding in this case. 28 U.S.C. §§ 157(b)(2)(B), (G), (I) and (L).

---

**6.** The Circuit Court of Appeals opined that "bankruptcy and district courts should tread very carefully when asked to impose sanctions for violation of the automatic stay where the actions underlying the violation involve alimony, maintenance, or support." *Carver*, 954 F.2d 1573, 1579.

**7.** The Supreme Court specifically concluded as follows: "We conclude, therefore, that the domestic relations exception, as articulated by this Court since *Barber* [*v. Barber*, 21 How. 582, 16 L.Ed. 226 (1859) ], divests the federal courts of power to *issue* divorce, alimony, and child custody decrees." —— U.S. ——, ——, 112 S.Ct. at 2215, 119 L.Ed.2d at 482 (emphasis added).

3.

If a bankruptcy court should exercise its jurisdiction, and if prepetition child support arrearage may be included in a chapter 13 plan, the next issue for consideration involves the treatment of such claims in a chapter 13 plan. *Mickelson v. Lesser (In Re Lesser)*, 939 F.2d 669 (8th Cir.1991) involved a plan that paid 100% of child support arrearage and 8% to other general unsecured claim holders. Without analysis or discussion, the Eighth Circuit announced that such disparate treatment was justified by the overwhelming public policy in favor of providing for support of children. This Court must consider whether such public policy has been established by the Congress of the United States or whether such policy is a judicial rewriting of the priorities established in the Bankruptcy Code.

When a state court adjudicates domestic relations issues, it need only consider the perspective of the best interests of the children and treating the parents fairly. However, the Bankruptcy Code requires that this Court balance the interests of the family, the debtor, and the creditors.

In this case, the debtor proposed treatment that pays plaintiff prior to other general unsecured claim holders. As mentioned above, no objection to confirmation under 11 U.S.C. § 1322(b)(1) was filed and the plan was confirmed. In determining how the plan treats the plaintiff, § 1322(b)(1) must be considered. The issue is whether a chapter 13 debtor may place child support arrearage claims that are nondischargeable, 11 U.S.C. § 1328(a)(2), in a special class and pay this class more than other general unsecured claims. If this is permitted, when the debtor receives a discharge after completing the payments called for by the plan, the fresh start will be strengthened by reducing the unpaid nondischargeable child support arrearage.

Because this plan pays less than 100% of allowed claims, confirmation had to be considered under the provisions of 11 U.S.C. § 1325(b), which require the debtor to make his best effort at paying his creditors. Under the terms of his plan, Defendant is paying all of his disposable income, i.e. that income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance and support of the debtor and his dependents, to his creditors for five years. 11 U.S.C. § 1325(b)(2). The Bankruptcy Code only requires that he provide all of his disposable income for three years. Section 1325(b)(1)(B). If the Bankruptcy Code were to be interpreted to sanction a plan favoring nondischargeable claim holders, the effect would be to enhance the payment of nondischargeable claims at the expense of those creditors holding dischargeable general unsecured claims. This is so because the total amount of funds to be distributed to creditors is fixed by the disposable income. In other words, if the slice of the pie for nondischargeable claim holders is increased, the portion distributable to dischargeable unsecured claim holders must decrease. The size of the pie will not grow. Priority and secured claim holders are paid before any payments to unsecured claim holders. 11 U.S.C. § 507 fixes the priorities for payment of claims. Congress did not include in this section a priority favoring nondischargeable unsecured claims over those that can be discharged.

A debtor is permitted to classify claims within the same priority. 11 U.S.C. § 1322(a)(3). However, such classification may not discriminate unfairly against any class so designated. 11 U.S.C. § 1322(b)(1). This subsection requires compliance with 11 U.S.C. § 1122 which permits classification of substantially similar claims. A classification favoring nondischargeable unsecured claims, which changes the priorities established in 11 U.S.C. § 507 in order to benefit the debtor as result of less nondischargeable claims at the end of the case, is a violation of 11 U.S.C. §§ 507, 1122 and 1322(b)(1). Courts may not modify the priorities in the Code. See, *Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co.)*, 963 F.2d 1490 (11th Cir.1992); *Phoenix Mut. Life Ins., Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 948 F.2d 134 (5th Cir.1992); *Olympia & York Florida Equity Corp. v. Bank*

*of New York (In re Holywell Corp.),* 913 F.2d 873 (11th Cir.1990).

Congress has provided for disparate treatment of similar claims for administrative convenience in § 1122(b), and has permitted unfair discrimination in favor of co-debtor consumer debts in § 1322(b)(1). Congress made no such similar permitted treatment for nondischargeable unsecured claims and, therefore, one should rationally conclude that such treatment was not intended.

Because the debtor has the discretion to classify claims, 11 U.S.C. § 1322(a)(3), the issue becomes whether the classification discriminates unfairly against the dischargeable unsecured claims. Unfair discrimination is not defined in the Bankruptcy Code, and the courts have developed a four-part test: "(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *Mickelson v. Leser (In re Leser),* 939 F.2d 669, 672 (8th Cir. 1991). This test is often not very useful as it can be reduced to a question of whether the discrimination is reasonable and fairly treats the creditors. *In re Lawson,* 93 B.R. 979 (Bankr.N.D.Ill.1988).

The two basis philosophies underlying the Bankruptcy Code are (1) a fresh financial start to an honest debtor and (2) fair treatment of claims to creditors. The test for determining unfair discrimination addresses whether the creditors are receiving fair treatment on their claims. Considering the four-part test, the Eighth Circuit would conclude the discrimination has a reasonable basis based upon the unsupported conclusion of an overwhelming public policy in favor of providing for support of children. *Mickelson v. Leser (In re Leser),* 939 F.2d 669, 672 (8th Cir.1991). As discussed above, Congress did not reflect such an overwhelming public policy in establishing priority for treatment of claims. Consequently, it must be considered not to have a reasonable basis. The next step considers whether the plan can be confirmed and consummated without the discrimination. As reviewed above, the total amount of payments by the debtor is fixed by his best effort. 11 U.S.C. § 1325(b)(1)(B). The disparate treatment does not affect the ability of the debtor to complete the plan. It merely affects the size of the slice of pie for each claim holder. Consequently, the plan can be consummated without the discrimination.

The third part of the test addresses good faith. *Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens),* 702 F.2d 885 (11th Cir.1983) sets forth many factors to consider when addressing good faith, including the treatment of nondischargeable claims. Because this is only one of many factors to be considered, good faith can be established without paying 100% of the nondischargeable claims. As this debtor is proposing to pay all of his disposable income for five years, the Court concludes that he has proposed this plan in good faith.

The final prong of the test considers the direct relationship of the discrimination to the rationale for the discrimination. The rationale for such treatment is the debtor's intention to benefit by reducing the nondischargeable unsecured claims and by enhancing payments on prepetition child support arrearages. As such, this part of the test is satisfied, especially in light of the small amount of dischargeable unsecured claims that are receiving the discriminatory treatment.

The priority of payments established by Congress in the Bankruptcy Code must be followed. This Court concludes that creditors receive an unfair treatment when the statutory priorities are judicially adjusted. This Court would be legislating if it reduced the slice of the pie served to dischargeable general unsecured claims in favor of nondischargeable claims. This limitation on judicial authority exists even in light of the compelling policy arguments in favor of child support. A similar conclusion was reached in *In re Chapman,* 146 B.R. 411 (Bankr.N.D.Ill.1992).

The result of this holding is that plaintiff will receive all that defendant is able to pay for five years, or until defendant receives a discharge in chapter 13 or the case is dismissed. At that time, defendant will have to make provisions for payment of the remaining unpaid child support arrearage. Even though Congress did not change the priority for treatment of claims, Congress did protect children by making the claims nondischargeable. 11 U.S.C. § 1328(a)(2). The conclusion reached in this case more nearly fits the delicate balancing of interest between the family, the debtor, and the creditors than the alternative sought by plaintiff.

Because defendant is already paying creditors all of his disposable income, if the stay were lifted and plaintiff were free to pursue collection, defendant would be unable to fund the plan. The necessary consequence would be for debtor to convert to a liquidation under chapter 7 which would result in zero payment to unsecured claim holders. This conclusion violates both of the underlying tenets of the Bankruptcy Code, i.e., to provide a fresh start and to accord fair treatment among creditors.

CONCLUSION

Following the foregoing analysis, relief from the automatic stay is precluded by confirmation of the plan. Even if such relief were not barred, the plan confirmed in the main case adequately provides for the plaintiff's claim. Indeed, it more than adequately provides for the claim because it includes a discrimination which is unfair to dischargeable unsecured claim holders, by reducing their priority for the benefit of plaintiff in violation of the priorities established in 11 U.S.C. §§ 507, 1122, and 1322. A separate order will be entered awarding a judgment in favor of plaintiff that the prepetition child support arrearage is nondischargeable, by consent of the defendant, and in favor of defendant on the other

claims seeking relief from the automatic stay.