### In re Ramiro Eulogio CAMACHO, Debtor.

Bankruptcy No. BK–S–96–21705–RCJ.

United States Bankruptcy Court, D. Nevada.

April 2, 1997.

Bonnie L. Johnson, Johnson & Johnson, P.C., Las Vegas, NV, for debtor.

Kathleen McDonald, Las Vegas, NV, Chapter 13 Trustee.

## MEMORANDUM DECISION

ROBERT C. JONES, Bankruptcy Judge.

Trustee, Kathleen McDonald's Opposition to Plan Confirmation came on for hearing in the above-entitled court on November 4, 1996, at 10:00 a.m. Trustee Kathleen McDonald appeared on her own behalf and the Debtor appeared by and through counsel of record, Johnson & Johnson, P.C., by Bonnie L. Johnson, Esq.

The Court, having read and considered the Motion, Opposition, and Reply, finding that

the notice given of the hearing on the Motion was adequate, and good cause appearing therefore,

IT IS HEREBY ORDERED that the Opposition to Plan Confirmation is **SUSTAINED**.

## FACTS

The debtor Ramiro Eulogio Camacho a.k.a. Ray E. Camacho filed for chapter 13 relief on April 10, 1996. The debtor had entered into a stipulation and order pre-petition with the Family Support Division of the Nevada District Attorney's office ("D.A.") for child support arrears for debtor's children who are in the custody of his ex-spouse Delores Camacho a.k.a. Delores Bryant. The stipulation requires the debtor to pay child support arrears in the amount of $100 per month to the D.A. Debtor proposed a chapter 13 plan which referenced the payments pursuant to the stipulation, but otherwise did not provide for payments for past due support. The chapter 13 Trustee objected to confirmation of the plan because the plan failed to pay all priority claims. The debtor's ex-spouse has not consented to the terms of the plan although the debtor has requested her consent.

## DISCUSSION

■ Section 1322(a)(2) [1] provides that a plan shall provide for full payment of all claims entitled to priority under § 507 unless the holder of the claim agrees to a different treatment. 11 U.S.C. § 1322(a)(2) (1994). The 1994 amendments to the Bankruptcy Code amended § 507 to include as a priority claim "debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child...." 11 U.S.C. § 507(a)(7) (1994). Prior to the amendments, there was a split in authority regarding whether a chapter 13 plan should provide for payment of support arrears. One line of cases held that support obligations should be given preferential treatment and should be paid in full under a chapter 13 plan. *In re Gonzales*, 172 B.R. 320, 326 (E.D.Wash.1994) (citing *In re Leser*,

939 F.2d 669, 672 (8th Cir.1991); *In re Benner*, 146 B.R. 265 (Bankr.D.Mont.1992); *In re Whittaker*, 113 B.R. 531 (Bankr.D.Minn. 1990); *In re Storberg*, 94 B.R. 144 (Bankr. D.Minn.1988); *In re Davidson*, 72 B.R. 384, 387 (Bankr.D.Colo.1987); *In re Haag*, 3 B.R. 649 (Bankr.D.Or.1980); and *In re Curtis*, 2 B.R. 43 (Bankr.W.D.Mo.1979)). This line of cases reason that a debt for child support was nondischargeable under § 523(a)(5) and public policy favors repayment of child support obligations. *Gonzales*, 172 B.R. at 326.

The other line of cases held that child support obligations should not be included in a chapter 13 plan on the basis that bankruptcy courts should not interfere with child support issues which are better handled by state courts. *Id.* (citing *Caswell v. Lang*, 757 F.2d 608, 610 (4th Cir.1985); *In re Warner*, 115 B.R. 233, 241 (Bankr.C.D.Cal.1989); *In re McCray*, 62 B.R. 11, 12 (Bankr.Colo.1986)). These courts reason that chapter 13 plans which include repayment of child support divest the state court of its ability to enforce payment of past due support. *Gonzales*, 172 B.R. at 326. In 1991, the Ninth Circuit Bankruptcy Appellate Panel sided with the latter line of cases in *In re Pacana*, 125 B.R. 19 (9th Cir. BAP 1991). In *Pacana*, the debtor's chapter 13 plan classified child support arrears as a priority claim but provided for only 14% payment, which was the payout for general unsecured claims. The BAP stated that nothing in § 507 makes child support obligations a priority claim, but § 362(b)(2) specifically excepts child support obligations from the automatic stay and §§ 523(a)(5) and §§ 1328(a)(2) except child support from discharge. *Id.* at 22–23. The BAP discussed a line of cases holding that federal tribunals should not interfere with state court decisions regarding how and when child support debt is to be paid. *Id.* at 23. The BAP then held that support obligations are insulated from mandatory inclusion in a chapter 13 plan. *Id.* at 25.

Since *Pacana*, however, § 507 has been amended to include child support obligations as a priority debt. Through this amendment,

---

1. Unless otherwise indicated, all references to Chapters, Sections and Rules are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, and to the

Federal Rules of Bankruptcy Procedure, Rules 1001, *et seq.*

Congress has announced its intent to allow bankruptcy courts to include payment of child support obligations in chapter 13 plans. Courts interpreting the new provision § 507(a)(7) have recognized that child support obligations must be afforded priority status in a plan. *See In re Doe*, 193 B.R. 12, 18 (Bankr.N.D.Cal.1996) (holding that claim for attorneys fees for representation of a child in a custody action are nondischargeable and entitled to priority under § 507(a)(7)); *In re Beverly*, 196 B.R. 128 (Bankr.W.D.Mo.1996) (holding that claim for child support arrears is entitled to payment in full); and *In re Grady*, 180 B.R. 461, 466 (Bankr.E.D.Va.1995) (holding that debt for attorneys fees arising under a divorce decree are in the nature of support and are therefore entitled to priority and must be paid in full). In addition, *Collier on Bankruptcy* states that because § 1322(a)(2) mandates payment in full of priority claims, a chapter 13 debtor now must pay support obligations in full unless the holder of the claim consents to a payment of a lesser amount. Lawrence P. King, 3 *Collier on Bankruptcy,* ¶ 507.04 at 507–36 (1996). *Collier* is in accord with the plain language of the code. The code is clear that a chapter 13 plan must provide for full payment of priority claims, including child support obligations, unless the holder of the claim consents to different treatment.

■ In this case, the plan did not provide for full payment of child support arrears but rather referenced monthly payments as provided for in a stipulation with the D.A. A debt for child support is defined by a state court order, either in the original divorce decree or a later judgment for arrears. If the state court order defines the debt as payable in monthly payments over a period of years, then a chapter 13 plan need not reorganize the debt, but rather provide for the monthly payments as per the state court order, even if the time period exceeds the

time period of a chapter 13 plan. Such a provision is analogous to a plan which provides for continuation of regular monthly payments on a home mortgage which by its own terms extends beyond the five year limitation on a chapter 13 plan.

■ Here, however, it was the D.A., not the state court, who defined the debt as payable in monthly installments rather than payment in full. Thus, the plan is violative of § 1322(a)(2) unless the holder of the claim agrees to different treatment.

From the present record, it is unclear who is the holder of the claim, and thereby entitled to consent to the plan's treatment. Although the D.A. filed the claim and consents to the stipulation, the debtor must also obtain the consent of his ex-spouse if she retains an interest in the claim. It is possible that the D.A. is only representing the interests of the state, for example if the D.A. is collecting arrears to pay back AFDC payments. Typically, in the case of AFDC, by operation of law a spouse assigns rights in support.[2] In this case it is not clear whether the debt was wholly assigned for AFDC payments or whether the ex-spouse retains an interest in the arrearages. The D.A. may only represent the interest of the state unless it has been authorized to represent the ex-spouse as well. The record does not show any such authorization. The debtor has not obtained the consent of his ex-spouse and this Court will not imply her consent from silence. As the debtor's ex-spouse has not consented to less than full payment, the debtor's plan cannot be confirmed.

For the above reasons, this Court finds that the Trustee's Opposition to Plan Confirmation is HEREBY SUSTAINED.

2. Both § 523(a)(5) and § 507(a)(7) contain identical phrases providing a specific exception for rights which have been assigned voluntarily, by operation of law, or otherwise. However, § 523(a)(5) was amended to include subsection (A) which makes nondischargeable a support debt which has been assigned to the state as a condition to obtaining AFDC. Laurence P. King, 3 *Collier On Bankruptcy* ¶ 523.15 at 523–106 (1996). Although, § 507(a)(7) does not contain a similar provision, "identical phrases used in different parts of the same act are intended to have the same meaning." *In re Grady*, 180 B.R. 461, 464 (Bankr.E.D.Va.1995). Because Congress used identical language in both § 523(a)(5) and § 507(a)(7), we can assume that Congress intended priority status under § 507(a)(7) for child support debt which has been assigned to the state for AFDC. *In re Beverly*, 196 B.R. 128, 132 (Bankr.W.D.Mo.1996).