In re Kent JACOBSON, Debtor.

Sandra Lynn Mudd, formerly known as Sandra Lynn Jacobson, Movant,

v.

Kent Jacobson, Debtor, and Ralph McDonald, Trustee, Respondents.

Bankruptcy No. 99–00373–PHX–CGC.

United States Bankruptcy Court, D. Arizona, Phoenix Division.

March 12, 1999.

Allan D. Newdelman, Allan D. Newdelman, P.C., Phoenix, Arizona, for Debtor.

Peter G. Kline, Crawford & Kline, P.L.C., Tempe, Arizona.

Ralph McDonald, Phoenix, Arizona, Trustee.

### ORDER RE MOTION FOR RELIEF FROM THE AUTOMATIC STAY

CHARLES G. CASE, II, Bankruptcy Judge.

## I. INTRODUCTION

This case brings into sharp focus the conflict that often exists between federal bankruptcy law and state domestic relations law. The Movant, Sandra Lynn Mudd, the former spouse of the Debtor, Kent Jacobson, is owed a substantial sum of child support arrearages arising out of divorce proceedings that date back over 15 years. She claims the arrearage amount is in excess of $70,000.00; the Debtor counters that it is only $34,000.00.[1] In her motion, she alleges that she has had to bring enforcement proceedings in superior court against the Debtor on at least 13 separate occasions. This case was filed on January 13, 1999, the eve of the last such hearing scheduled for January 14, 1999 at 4:00 p.m.

The Movant has requested relief from the stay, arguing that the enforcement of child support orders is within the particular expertise of the state courts and that the federal courts have traditionally deferred to the state courts in such matters. The Movant argues that she will be injured if she is not allowed to enforce her claims through all available measures, including contempt of court procedures in state court. She currently is the beneficiary of an order requiring payment of $1,000.00 per month or 50% of net income, whichever is greater, until the arrearage obligations have been satisfied. The Debtor

---

1. The amount of the claim is not directly at issue in this contested matter and no evidence has been presented on this point by either side. The obligation is completely for past due amounts; there is no continuing obligation as all of the children have now reached majority.

argues that he should be given the opportunity to pay whatever the amount owed is in full through his Chapter 13 plan and that, not only would the Movant not be hurt by agreeing to such a procedure, but that she should be "ecstatic" because it would provide an orderly way of satisfying this long past due obligation.

For the reasons stated in this order, the Movant's request that the stay be terminated will be denied without prejudice; however, the stay will be modified as stated herein.

## II. DISCUSSION

Prior to the 1994 amendments to the Bankruptcy Code, Chapter 13 did not provide an effective method for paying past due support or maintenance obligations. Although such obligations were nondischargeable under 11 U.S.C. § 523(a)(5), they were not given priority. As a result, they were treated as unsecured obligations within Chapter 13 plans and the plan was therefore subject to objection if it purported to pay such unsecured obligations more favorably than other similarly situated, though dischargeable, unsecured claims. This fact contributed to the long line of cases that limited involvement by the federal courts in the collection of alimony, maintenance, or support in Chapter 13 cases and that liberally granted relief from the stay to pursue alimony, maintenance or support obligations in the state courts notwithstanding the Chapter 13 case. *See, e.g., In re Simpson,* 140 B.R. 857 (Bankr.E.D.Pa.1992); *In re Hohenberg,* 143 B.R. 480 (Bankr.W.D.Tenn.1992).

In the Ninth Circuit, this line of cases was exemplified by *In re Pacana,* 125 B.R. 19 (9th Cir. BAP 1991). *Pacana* squarely held that while a Chapter 13 plan may alter or delay the enforcement of ordinary unsecured creditors' claims, child support claimants need not wait in line with such creditors but rather may proceed against the debtor without the hindrance of either automatic stay or discharge.

The question that this case presents is whether a different result should obtain to-day in light of the 1994 amendments; put another way, should this Court conclude that *Pacana* is no longer the law in this circuit because Congress has changed the statute.

In 1994, Congress created a new 7th priority, 11 U.S.C. § 507(a)(7), for support and maintenance arrearage obligations. In a Chapter 13 case, it is mandatory that a plan "provide for the full payment, in deferred cash payments, of all claims entitled to priority under Section 507 of this title." 11 U.S.C. § 1322(a)(2). Further, 11 U.S.C. § 1328 makes it clear that support and maintenance obligations survive the "superdischarge" granted to debtors upon the completion of all payments under a plan. Reading these several sections together, the conclusion is undeniable that Congress intended in 1994 to change the law such that maintenance and support obligations not only may, but must, be treated specially and paid in full under a Chapter 13 plan.

This conclusion undercuts the fundamental reasoning of *Pacana.* The *Pacana* court inferred that Congress did not intend that support and maintenance creditors should be subject to the delays of Chapter 13 and "stand in line" with other unsecured creditors. Congress has now stated that, to the contrary, it intends that such creditors go to the front of the line and that they be paid in full.[2]

■ Given this state of the law, this Court concludes that granting relief from stay in a Chapter 13 case in order to allow enforcement of those obligations in a state court should now be the exception rather than the rule. This is not to say that Congress has concluded that the federal courts should meddle in this area of the law that has traditionally been within the expertise of the state courts. There is no suggestion that this Court should have any say whatsoever about the establishment or modification of support obligations, the determination of paternity, the determination of child custody, or any other of the issues normally decided in a divorce case. However, what Congress has said is that Chapter 13 may be used to pay in full the obligations that have been deter-

---

**2.** See Adler and Taber, *The Treatment of Divorce Debts in Bankruptcy After the Reform Act of 1994,* 23 Cal.Bankr.J. 149 (1996); *In re Camacho,* 211 B.R. 744, 745–46 (Bankr.D.Nev.1997).

mined by the state court. Therefore, the issue to be decided in a stay modification proceeding is whether the rights of the Movant to payment of her claim are in fact adequately protected by the proposed treatment of those claims under the Debtor's plan.

Before reaching that ultimate conclusion, one further matter deserves discussion. Under the Movant's state court judgment, and in accordance with state law, the Movant is entitled to interest on the unpaid child support arrearages. The issue presented in this motion is whether there is cause to modify the automatic stay to allow the Movant to enforce her judgment in state court. Part of that analysis should be whether her right to collect interest will be adversely affected by instead requiring her to accept payment through the Chapter 13 bankruptcy plan.

11 U.S.C. § 1322(a)(2) states that a plan must "provide for full payment, in deferred cash payments" of priority domestic relations claims. It does not say that the deferred cash payments must have a present value equal to the amount of the claim; for comparison, *see,* 11 U.S.C. § 1129(b)(2)(A)(i). In the absence of such a clear statement, it would appear that the proscription against "unmatured" interest of 11 U.S.C. § 502(b)(2) would mean that interest should not be paid from the estate. However, 11 U.S.C. § 1328(a)(2) makes clear that support and maintenance claims are not dischargeable in a Chapter 13 because they are provided for under 11 U.S.C. § 523(a)(5). Therefore, there is the following conundrum; although the interest is not dischargeable under 11 U.S.C. § 1328(a)(2), is it nevertheless not payable through the plan under 11 U.S.C. § 502(b)(2)? [3]

A very similar issue has recently been treated in *In re Pardee,* 218 B.R. 916 (9th Cir. BAP 1998). In that case, the Bankrupt-

cy Appellate Panel ("BAP") addressed the question whether post-petition interest on a nondischargeable student loan survived the discharge of § 1328 after all plan payments had been made. Applying the principle established by the Supreme Court in *Bruning v. The United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), the BAP held that post-petition interest on a nondischargeable student loan debt did survive the discharge in a Chapter 13. The Court did note, however, that in accordance with *Bruning,* the claim for post-petition interest was collectible from the debtor though not from the estate. Indeed, the *Pardee* court stated:

> Section 502(b)(2) clearly disallows recovery of unmatured interest from the bankruptcy estate. Therefore, this rule bars recovery from the bankruptcy estate of post-petition interest on a nondischargeable debt. [citation omitted] However, Section 502(b)(2) does not prescribe recovery from the debtor personally for nondischargeable debts that are not paid from the bankruptcy estate. Because post-petition interest on a nondischargeable debt cannot be paid from the bankruptcy estate, the holder of the unpaid claim may seek to recover on that claim once the discharge injunction has been lifted (i.e., once plan payments have been completed in a Chapter 13 case).

218 B.R. at 921.

▪ Therefore, under *Pardee,* the plan may not provide for payment of interest even though the debtor will eventually be liable for the interest even after all plan payments have been made.[4] What does all of this mean on the question of whether the Movant's right to payment of this nondischargeable claim will be adequately protected if she is required to wait for payment under the Chapter 13 plan? First, it is clear that the plan must provide adequate funding for the total amount due under the applicable state court orders as of the date of the filing,

---

3. For an interesting discussion of these issues, See Judge Klein's separate opinion in *Pardee,* 218 B.R. at 927–932 (Klein, J., concurring in part and dissenting in part).

4. Although *Pardee* dealt with a nondischargeable and nonpriority student loan debt, the same reasoning applies to nondischargeable priority support claims. Because § 1322(a)(2) provides only

for full payment of "claims entitled to priority under § 507 of this title" and the § 507(a)(7) priority is only for "allowed *claims* " for support and maintenance, the proscriptions of § 502(b)(2) against the allowance of unmatured interest mean that such post-petition interest are excluded from the amount that must be fully paid under § 1322(a)(2).

including unpaid support, awarded attorneys's fees and costs, and pre-petition interest. This amount should be readily determinable in that only payments made through the clerk of the superior court may be used to reduce the amount set forth in the judgment. Second, requiring the Movant to wait until after the completion of 5 years of plan payments before she can then go back to state court to receive interest would, in this Court's view, not adequately protect her rights. Therefore, in order for the stay not to be terminated, a mechanism must be provided by the Debtor for the current payment of the interest during the course of the Chapter 13.

The Debtor's current plan provides that, contrary to the ordinary workings of § 1327(b), the property of the estate upon confirmation will not revest in the Debtor but remain with the estate. While a Chapter 13 plan and confirmation order may do this, the impact is to prevent a support creditor, such as the Movant, from enforcing her rights of collection in state court.[5] Therefore, for the stay to remain in place, the plan needs to be modified such that the portion of the Debtor's income that is necessary to pay the ongoing interest cost revests in the Debtor and is subject to collection by the Movant in the state courts. While this is a cumbersome procedure, it is necessary in order to protect Movant's rights to post-petition interest while at the same time respecting the decision in *Pardee* on the impact of § 502(b)(2).

### III. CONCLUSION

For the foregoing reasons, the Court concludes that an immediate termination of the stay is not appropriate in this case and that the Debtor should be entitled under federal law to repay this fixed debt through a Chapter 13 plan. This result flows from the 1994 amendments to the Bankruptcy Code, which made nondischargeable maintenance and support obligations also *priority* claims entitled to full payment under a Chapter 13 plan. The line of authority that relief from stay should be liberally granted in these circum-

stances arose prior to such amendment and during a time when Chapter 13 was not a reasonable vehicle for the payment of this type of debt and is therefore not applicable.

However, under the facts of this case and due to the special rights that Movant possesses as the holder of both a priority and a nondischargeable claim, the stay will be modified and conditioned as follows:

1. The stay will be modified to allow the determination by the state court of the exact amount of the claim (including interest, fees and costs) as of the date of the bankruptcy together with the appropriate rate of interest accruing on such claim. The Movant is not required to go to state court; rather, she can file a proof of claim in this Court and it will be promptly adjudicated. However, if she prefers, she may have the amount of the claim fixed by the state court.

2. The plan must be modified to provide for ongoing payment from the Debtor after confirmation of accruing post-petition interest.

3. In the event this case is dismissed, either voluntarily by the Debtor or as the result of the failure of the Debtor to meet a condition imposed by the Trustee, such dismissal will be deemed by this Court to have satisfied the requirements of 11 U.S.C. § 109(g)(1) or (2), thereby giving rise to a bar of 180 days to the filing of any future bankruptcy case.

4. A continued hearing will be held on this matter on the *1st* day of *April, 1999 at 2:30 p.m.* to assess the progress made in fulfilling the terms of the order and to determine whether the stay should be further modified at that time.

So ordered.

---

**5.** 11 U.S.C. § 362(b)(2)(B) exempts from the operation of the stay "the collection of alimony, maintenance, or support from property that is not property of the estate." Under the Debtor's plan, all future income would remain property of the estate until the plan payments are fully made, thereby making the enforcement of such obligations in the state court subject to the stay provisions of 11 U.S.C. § 362(a)(2).