In re Lauren R. MESSINGER, Debtor.

Bankruptcy No. 99–01155.

United States Bankruptcy Court,
D. Idaho.

Oct. 22, 1999.

Harold Q. Noack, Jr., Boise, Idaho for the Debtor.

Jerry W. Korn, Caldwell, Idaho, for Janice Hargrave.

John H. Krommenhoek, Boise, Idaho, Chapter 13 Trustee.

## MEMORANDUM OF DECISION, AND ORDER

TERRY MYERS, Bankruptcy Judge.

Lauren R. Messinger ("Debtor") has proposed a Second Amended Chapter 13 Plan to which Debtor's ex-wife Janice Hargrave, an unsecured priority creditor, filed objections. After confirmation hearing held on September 27, 1999, the Court took the matter under advisement.

### BACKGROUND

On May 18, 1999, Debtor filed his petition for relief. According to his schedules, Debtor owed approximately $143,-463.00 to secured creditors, $30,000.00 to Ms. Hargrave on an unsecured priority claim, and $3,370.00 to creditors holding unsecured nonpriority claims. Ms. Hargrave's claim is for unpaid child support and interest, and is in the amount of $28,-392.49 as established by an Order entered April 28, 1999, by the Hon. Terry R. McDaniel of the Fourth Judicial District for the State of Idaho. In this order, Judge McDaniel also ordered that Debtor pay Ms. Hargrave's attorneys' fees which were incurred in pursuing the child support enforcement action.[1]

In this case, Debtor has filed three Chapter 13 plans, each dealing primarily with Ms. Hargrave's claim. Debtor's intention in each is to pay secured creditors "outside" of his Chapter 13 Plan, i.e.,

---

1. Fees are part of the non-dischargeable, priority claim and must be funded in the plan. *See, In re Camacho,* 211 B.R. 744, 746 (Bankr.D.Nev.1997); *Beaupied v. Chang (In re Chang),* 163 F.3d 1138 (9th Cir.1998). The state court order did not set forth an amount, but Ms. Hargrave has not objected to the assertion in the Debtor's Second Amended Chapter 13 Plan, which proposes payment of such fees in an amount of $1553.25.

through payments made directly by the Debtor rather than by the Trustee.[2] The payments made through the Trustee will service only Ms. Hargrave's child support claim and attorneys' fees, the Trustee's fee, and any administrative expenses.

In the first plan filed on May 18, 1999, Debtor proposed to pay the Trustee $350.00 a month for 59 months, with $300.00 of the monthly payment to the Trustee to be dedicated to Ms. Hargrave's claim with the remaining "balance" owed her to be paid in the 60th month.[3] Ms. Hargrave objected to this treatment.

On July 12, 1999, the date set for confirmation hearing on the plan, Debtor filed his first amended Chapter 13 plan. Debtor proposed to pay the Trustee $549.00 a month for 60 months, for a total of $32,940.00.[4] In this plan, $499.10 of the total monthly payment to the Trustee was to be dedicated to Ms. Hargrave's claim with the apparent objective of paying it in full in equal monthly installments without a balloon payment in the final month.

A continued confirmation hearing was held on August 10, 1999, and Ms. Hargrave raised for the first time objections concerning the issues of accrual of interest on the child support debt.[5] She also objected to the Debtor's retention or partial retention of future tax returns. The Court took the matter under advisement, and granted the parties leave to submit legal authorities on these issues.

On August 30, 1999, Debtor filed (in lieu of briefing) his Second Amended Chapter 13 Plan. This plan proposed to pay the Trustee $600.00 monthly for 60 months with all projected tax returns for the first 36 months to be turned over to the Trustee. Debtor claims that this plan will pay the entire $28,293.49 owed to Ms. Hargrave in equal monthly installments over 60 months, and pay interest on $10,200.00 of that claim at a rate of 10.5% per annum.[6]

On September 9, 1999, Ms. Hargrave filed a renewed objection to confirmation of the Second Amended Plan Chapter 13 Plan. She objects to confirmation of this plan on the following five grounds:

a) Debtor fails to turnover all tax refunds to the Trustee during the entire five year term of the plan;

b) Debtor's proposed plan payment of $600.00 monthly is in excess of the $566.00 of disposable income available according to his budget;

c) Debtor has failed to provide for upward adjustments to his plan payments after the three secured debts to the Boise U.S. Employees Federal Credit Union and Boise Cascade Credit Union are paid off in two and a half to three years;

d) Debtor's plan is not offered in good faith;

**2.** These secured claims are: $129,284.00 owed to Washington Mutual secured by a residence with a monthly payment of $1,176.00; $3,500.00 owed to Boise Cascade Credit Union secured by a 1987 Ford Pick-up with a monthly payment of $109.00; $7,289.00 to Boise U.S. Federal Employees Credit Union secured by a 1993 Ford pick-up with a monthly payment of $354.00; and $3,390.00 to this same creditor for a debt secured by a camper and boat with a monthly payment of $147.00.

**3.** Ms. Hargrave would thus be paid $17,700.00 ($300.00 × 59) leaving a "balloon" payment for the 60th month. The exact amount of this balance was not set forth in the plan, but rough calculations would indi-

cate it would be approximately $12,000.00 even without consideration of any interest accrual.

**4.** Schedules I and J, which had shown $350.00 in monthly disposable income, were simultaneously amended, and asserted $566.00 in monthly disposable income, and a $549.00 plan payment.

**5.** The June 11 objection of Ms. Hargrave did not raise or allude to the issue of post-petition interest.

**6.** The plan calls for interest to accrue on $10,200.00 of the claim from April 28, 1999, up to the termination of the plan or until the $10,200.00 is paid, whichever occurs first.

e) Debtor has failed to provide for payment of interest on the entire $28,392.49 amount of the state court judgment.

The matter came before the Court again for hearing on September 27, 1999, after which the Court took the matter of confirmation under advisement.

## DISCUSSION OF OBJECTIONS TO CONFIRMATION

### 1. Tax refunds.

■ The Debtor proposes to turn over all tax refunds he would receive to the Trustee for the first 36 months of his plan. This proposal complies with § 1325(b)(1)(B) which requires all Debtor's projected disposable income be committed to the plan for 36 months.[7] While a debtor may propose a plan longer than 36 months, up to a maximum of 60 months, § 1325(b)(1)(B) by its terms does not require commitment of disposable income in months after the 36th.[8]

For these reasons, the Court does not find that Debtor's treatment of tax refunds creates an impediment to confirmation.[9]

### 2. Budget deficiency.

■ Debtor's Second Amended Plan proposes monthly payments in excess of his projected disposable income. Debtor apparently feels his budget and expenses can be massaged to find the necessary extra $34.00 per month. While proposed plan payments have been increased through a series of upward amendments, thus raising questions about the accuracy of the budgets, the Court finds the magnitude of the present issue relatively minor, and that feasibility is not seriously implicated. The Court also notes that the additional income Debtor should receive by adjusting his tax withholding, *supra,* will impact this issue. Accordingly, the Court does not find that the present budget shortfall mandates denial of confirmation.

### 3. Excess funds.

■ Debtor proposes to pay all projected disposable income into the plan for the requisite three year period. § 1325(b)(1)(B). This provision does not require that Debtor must commit the presumptively "disposable" funds into the plan which will become available in its fourth and fifth year by virtue of the payoff of three credit union obligations.[10] Thus, Debtor need not apply to the plan the funds made available when the secured claims are paid off. There clearly is an issue of whether Debtor might wish to commit this excess to paying Ms. Hargrave, as discussed below, but the failure to do so doesn't require denial of confirmation.

### 4. Plan not filed in good faith.

■ Section 1325(a)(3) of the Bankruptcy Code provides that a bankruptcy court shall confirm a plan "if the plan has been proposed in good faith and not by any means forbidden by law."

---

7. At the hearing on September 27,1999, Debtor's counsel represented that Debtor would adjust his withholding, thus eliminating any returns he might receive. This would moot the issue presented, but would also have the effect of increasing the net income available on a monthly basis. The specifics of the impact on Debtor's monthly available income were not disclosed.

8. Of course, a debtor may elect to provide these sums in years 4 and 5 if he so chooses. Such a choice might be motivated, for example, by a need to meet other confirmation standards.

9. The Court determines, *infra,* that the present plan may not achieve Debtor's apparent goals. An opportunity is therefore provided for Debtor to amend his plan. If the plan is so amended, Debtor shall also be expected to address, through amended Schedules I and J, the budget adjustments flowing from the change in tax withholding.

10. Of course, most debtors who find it necessary to propose a plan under § 1322(d) extending beyond 36 months, voluntarily commit all disposable income in the additional months in order to minimize the total plan term and exit bankruptcy sooner.

■■ In determining good faith "[t]he bankruptcy court must consider the totality of the circumstances, including pre-petition conduct, in deciding whether the debtor has 'acted equitably.'" *In re Tucker,* 989 F.2d 328, 330 (9th Cir.1993) *quoting, In re Goeb,* 675 F.2d 1386, 1390 (9th Cir. 1982). In making a good faith evaluation the court looks at several factors which are indicative of bad faith: whether the plan in proposed in an inequitable manner; whether the debtor is attempting to unfairly manipulate the Bankruptcy Code; whether the debtor has misrepresented the facts in his plan; and whether the debtor has acted in an equitable manner in proposing his plan. *Goeb,* 675 F.2d at 1390.

In the present case, the Court finds Debtor is proceeding in good faith. He is attempting to find a way, consistent with the Code's requirements, to fund Ms. Hargrave's claim. A chapter 13 plan is an appropriate and reasonable vehicle to do so. That Debtor and Ms. Hargrave have issues concerning confirmation requirements or the precise terms of payment under the plan does not, in the Court's consideration of all the circumstances, require a conclusion that Debtor lacks good faith. Accordingly, this objection will not bar confirmation.

### 5. Failure to pay post-petition interest on the claim.

Debtor's first plan proposed to pay "all" of Ms. Hargrave's claim, albeit with a balloon payment in the 60th month. When it became evident that this proposal might not be confirmed, Debtor amended his plan to fund the entire claim over the 60 month term of the plan, without a balloon, but also without interest.

This proposal brought forth a new objection from Ms. Hargrave— that no provision was made for payment of interest accruing on the debt. In lieu of submitting authorities supporting confirmation of the First Amended Plan, the Debtor opted to file the Second Amended Plan, which provides for payment of interest on a portion of the debt. Ms. Hargrave again objected to this plan.

Child support obligations are priority debts under § 507(a)(7). A chapter 13 plan, by virtue of § 1322(a)(2), must "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim."

■ "Full payment" however, does not require payment of the claim with post-petition interest. *In re Cora,* 96.1 I.B.C.R. 25, 26 (Bankr.D.Idaho 1996). When Congress intends that a claim be paid with such interest, it states that the creditor will receive "value, as of the effective date of the plan, equal to the allowed amount of such claim." *See, e.g.,* §§ 1129(a)(9)(B)(i), 1129(a)(9)(C), 1325(a)(5)(B)(ii); *Cora,* 96.1 I.B.C.R. at 26. No similar language is used in § 1322(a)(2) in regard to child support or other priority debt in chapter 13. *See, Jacobson v. Jacobson (In re Jacobson),* 231 B.R. 763, 766 (Bankr.D.Ariz. 1999).

Accordingly, although Ms. Hargrave's claim is given priority status and she must be paid in full under § 1322(a)(2), she is not entitled to insist on payment of post-petition interest through the plan on the debt owed to her. *Cora,* 96.1 I.B.C.R. at 26; *Jacobson,* 231 B.R. at 766. In order to be confirmed, the plan need only provide payment for the pre-petition claim, i.e., $28,392.49 plus additional interest accrued up to the date of bankruptcy,[11] and the attorneys' fees discussed above. Debtor's Second Amended Chapter 13 Plan has proposed to pay this claim of Ms. Hargrave's in full. Accordingly, this objection is not an impediment to confirmation.

---

11. As to the accrued pre-petition interest which would be part of the claim, the parties have not identified any specific amount of interest for the period from the entry of the state court order on April 28, 1999, to the filing of the petition on May 18, 1999.

## CONCLUSION ON OBJECTIONS TO CONFIRMATION

After review and consideration, and for the reasons stated, the Court finds and concludes that Ms. Hargrave's objections shall be overruled, and that the Second Amended Chapter 13 Plan can be confirmed as presented.

However, even though confirmation is possible, the Court deems it appropriate to discuss whether the present plan will discharge Debtor of all liability to Ms. Hargrave at its conclusion, in light of the issue of post-petition interest accrual. Debtor's conduct and submissions reflect an intent to fully satisfy and eliminate all claims of Ms. Hargrave, including any claims to post-petition interest which would otherwise survive discharge. The Court concludes that the present plan, though confirmable, will not achieve this apparently desired result.

## ACCRUAL AND DISCHARGE OF POST–PETITION INTEREST

### 1. Calculation of interest under state law.

▮ Pursuant to the April 28, 1999, state court order, Debtor owes Ms. Hargrave $28,392.49 for unpaid child support and accrued interest through that date. Debtor contends that, under state law, interest only accrues on $10,200.00 of this debt—the amount of the actual delinquent child support installments—and that Ms. Hargrave is not entitled to "interest on interest" and he has proposed his plan accordingly. Debtor relies on *Hunsaker v. Hunsaker*, 117 Idaho 192, 786 P.2d 583 (1990).

In *Hunsaker*, the Idaho Supreme Court held that interest accrues at the rate set by Idaho Code § 28–22–104 from the due date of each delinquent child support installment. *Hunsaker*, 117 Idaho at 194, 786 P.2d at 585.[12] This decision, however, does not address how interest would ac-

crue on an integrated judgment that combines both delinquent child support debt and all interest accrued up to the date of that judgment. In *Davis v. Davis*, 114 Idaho 170, 172, 755 P.2d 3, 5 (Ct.App. 1988), the court indicates that unpaid child support installments and the interest accrued thereon "merge" into a state court's judgment, and that statutory interest accruing under § 28–22–104 on the entire judgment amount after the date of its entry was proper.

In this case, the debt which Debtor owes to Ms. Hargrave has been set by a single judgment in the amount of $28,392.49. Accordingly, this judgment would begin accruing interest at the rate set by Idaho Code § 28–22–104(2) as of its entry. *Davis*, 114 Idaho at 172, 755 P.2d at 5. Debtor has not persuaded the Court that *Hunsaker* requires the instant state court order to be parsed into component parts for purposes of calculating accruing interest on the delinquent support, rather than simply accruing interest on the total judgment per *Davis*, or that the apparently clear language of this statute ("The legal rate of interest on money due on the *judgment of any competent court* or tribunal ....") should not apply.

Accordingly, the Court concludes that interest accrues under state law on the entire amount of the judgment of the state court, and not just on those amounts representing unpaid support installments.

### 2. Post-petition interest on child support debt is non-dischargeable.

▮ Because support obligations are non-dischargeable under §§ 523(a)(5) and 1328(a)(2), the interest accruing post-petition on those debts is also a "non-dischargeable" obligation for which the Debtor will remain liable upon completion of his plan. *In re Hutton*, 99.1 I.B.C.R. 12, 13 (Bankr.D.Idaho 1999); *Cora*, 96.1 I.B.C.R. at 26; *Jacobson*, 231 B.R. at 766; *In re*

---

12. The support obligor in *Hunsaker* argued that no interest could accrue on a delinquent support installment unless it was first reduced to judgment. It was this contention that the court addressed, and rejected.

*Slater*, 188 B.R. 852, 856 (Bankr. E.D.Wash.1995).

*Great Lakes Higher Education Corp., v. Pardee (In re Pardee)*, 218 B.R. 916 (9th Cir. BAP 1998) discussed the concept:

> However, the Wasson court confused the concept of claim disallowance under § 502(b)(2), in which a claim for unmatured interest cannot be paid from the bankruptcy estate, with the concept of nondischargeability under §§ 523(a)(8) and 1328(a)(2). Section 502(b)(2) clearly disallows recovery of unmatured interest from the bankruptcy estate. Therefore, this rule bars recovery from the bankruptcy estate of postpetition interest on a nondischargeable debt. See H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 62 (1978), reprinted in 1978 U.S.C.C.A.N. 5848, 6308–09. However, § 502(b)(2) does not proscribe recovery from the debtor personally for nondischargeable debts that are not paid from the bankruptcy estate. Because postpetition interest on a nondischargeable debt cannot be paid from the bankruptcy estate, the holder of the unpaid claim may seek to recover on that claim once the discharge injunction has been lifted (i.e., once plan payments have been completed in a chapter 13 case). While the discharge provision of § 1328 generally discharges all debts provided for by the plan or disallowed under § 502, student loan debts are specifically excepted from discharge. See 11 U.S.C. § 1328(a)(2). Thus, applying the Bruning principle, postpetition interest on nondischargeable student loan debts are also excepted from discharge under § 1328(a)(2).

218 B.R. at 921–22. *See also*, 218 B.R. at 928–31 (Klein, J. concurring in part and dissenting in part).

Debtor apparently wants to avoid the "conundrum"[13] by making provision for payment during the plan of any and all potentially "non-dischargeable" post-petition interest. As discussed above, his present proposal falls short under *Davis*. However, this is not an impediment to confirmation *unless* the accrual of unserviced post-petition interest exposes the plan to risk of failure by reason of the creditor's possible post-petition collection activity. *Cora*, 96.1 I.B.C.R. at 27; *see also*, *Jacobson*, 231 B.R. at 765–67.

It appears that Debtor wants to avoid the risk of stay litigation during the plan term or the possibility that there might be a non-dischargeable debt remaining at the plan's end. That appears to be the motivation behind the last amended plan through which Debtor proposed to pay what he believed was the potentially non-dischargeable interest obligation. It is conceivable that some debtors would tolerate this risk, and confirm plans with the expectation of keeping the stay in effect for the duration of the plan, and dealing with the non-discharged portion of the post-petition interest after the bankruptcy has concluded. But the Court cannot conclude that this Debtor has decided to do so.

Now that the methodology of interest accrual has been addressed, Debtor may desire to commit to his plan the funds made available in years 4 and 5 as a result of paying off secured creditors outside the plan, and also made available from amend-

13. *In re Jacobson*, 231 B.R. 763, 766–67 (Bankr.D.Ariz.1999) states:

11 U.S.C. § 1322(a)(2) states that a plan must "provide for full payment, in deferred cash payments" of priority domestic relations claims. It does not say that the deferred cash payments must have a present value equal to the amount of the claim; for comparison, *see*, 11 U.S.C. § 1129(b)(2)(A)(i). In the absence of such a clear statement, it would appear that the proscription against "unmatured" interest of 11 U.S.C. § 502(b)(2) would mean that interest should not be paid from the estate. However, 11 U.S.C. § 1328(a)(2) makes clear that support and maintenance claims are not dischargeable in a Chapter 13 because they are provided for under 11 U.S.C. § 523(a)(5). Therefore, there is the following conundrum; although the interest is not dischargeable under 11 U.S.C. § 1328(a)(2), is it nevertheless not payable through the plan under 11 U.S.C. § 502(b)(2)?

ing his tax withholding. Because of this possibility, the Court will allow Debtor additional time to address this issue and, if desired, to amend his chapter 13 plan once again.[14]

## CONCLUSION AND ORDER

The Court concludes that none of the objections raised by Ms. Hargrave requires denial of confirmation. The Second Amended Plan adequately provides for the "full payment" of the priority claim as of the date of bankruptcy.

However, because Debtor does not provide a mechanism to pay all the post-petition interest which will accrue on the child support claim, and because that interest is non-dischargeable and will be left due and owing at the conclusion of the plan, Debtor shall be provided an opportunity to amend his plan. If the plan is not amended within fifteen days (15) days of the date hereof, and scheduled for hearing on notice, the Court will enter an order confirming the presently submitted Second Amended Chapter 13 Plan.

---

14. *Jacobson* contains an excellent analysis of these issues. In part, Judge Case concludes that, under *Pardee* and the Code, the non-dischargeable interest may *not* be paid through the plan. 231 B.R. at 766. However, a debtor must make some provision for the current and ongoing payment of interest during the plan term to avoid stay relief that would jeopardize the plan. 231 B.R. at 767 ("[I]n order for the stay not to be terminated, a mechanism must be provided by the Debtor for the current payment of the interest during the course of the Chapter 13.") Presumptively this could be done by reserving in the debtor's monthly budget, Schedule J, an amount committed to this payment. Whether paid in such fashion or "through" the plan would appear to be a distinction without an economic difference *so long as* other creditors of the estate are not adversely impacted. The potentially impacted creditors in this case are few in number and small in amount, but they are entitled to notice of Debtor's proposals, including any newly amended plan. The Court shall also expect Debtor to be prepared to address this issue at any continued confirmation hearing.