# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2871

_____

| | | |
|---|---|---|
| In re: Clarence Lee Burnett, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| _____ | * | |
| | * | |
| Nancy Jo Burnett, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | Bankruptcy Appellate Panel |
| | * | for the Eighth Circuit. |
| Clarence Lee Burnett, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 15, 2010
Filed: July 20, 2011

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Clarence Burnett ("Mr. Burnett") reopened his Chapter 13 bankruptcy proceedings and, thereafter, moved the bankruptcy court to hold in contempt his former spouse, Nancy Jo Burnett ("Ms. Burnett"), and her subrogee, West Virginia's Department of Health and Human Resources, Bureau of Child Support Enforcement (BCSE), for violating the terms of Mr. Burnett's confirmed Chapter 13 repayment plan by seeking income-withholding orders against him for child- and spousal-support

arrears. The bankruptcy court refused to hold Ms. Burnett or BCSE in contempt but did reduce the income withholding. On appeal, the Bankruptcy Appellate Panel (BAP) reversed the bankruptcy court's order and reinstated the income withholdings. We affirm in part and reverse in part the BAP's order, and remand to the bankruptcy court for further proceedings consistent with this opinion.

## I. *Background*

In 1969, Mr. Burnett married Ms. Burnett, and, on May 24, 1971, the two had their only child. In 1982, Ms. Burnett petitioned the Boone County Circuit Court ["circuit court"] in West Virginia, to dissolve the marriage. On November 12, 1983, Mr. Burnett and Ms. Burnett memorialized a written separation agreement, pursuant to which, Mr. Burnett committed to pay Ms. Burnett "$750.00 per month for child support and alimony until the child reaches the age of eighteen years of age, becomes self-supporting, marries or dies." The agreement did not state what percentage of the monthly $750.00 payment would serve as child support, and what percentage would serve as alimony/spousal support.

Mr. Burnett soon became delinquent in his monthly payments, and over time amassed a substantial arrearage. On August 29, 2001, the circuit court entered an order finding Mr. Burnett in arrears for the principal sum of $57,402.70. Nevertheless, the circuit court concluded that it was "unable to make a finding as to the appropriate amount of outstanding interest" and resolved to "hold[] said matter in abeyance pending further testimony at a later hearing." However, on December 13, 2001, before the circuit court could hold further proceedings, Mr. Burnett and his current spouse filed for protection under Chapter 13 of the Bankruptcy Code.

On July 1, 2004, following three years of protracted bankruptcy litigation focusing largely on the child/spousal support issue, the bankruptcy court approved the parties' agreed order, which provided in paragraph two as follows:

The parties have reached an agreement as follows: Debtor will modify his plan to provide for payment of $300.00 per month for the allowed claim of $57,402.70 over the life of the plan. Once the plan is concluded and the bankruptcy action is terminated, Debtor will continue to pay the sum of $300.00 per month toward the balance of the allowed claim until the debt is satisfied in full. Creditor reserves the right to return to the Boone County Circuit Court in West Virginia after this bankruptcy action is concluded to litigate the issue of accrued interest on the support arrears; Debtor reserves the right to assert defenses regarding the issue of accrued interest on the support arrears.

Paragraph two of the parties' agreed order thus reserved Ms. Burnett's right to return to the circuit court to litigate the accrued interest on the "*support* arrears." (Emphasis added.) In reserving this right, the agreed order did not distinguish between child support and spousal support/alimony. In contrast, Mr. Burnett's resulting third modified plan—to which Ms. Burnett did not object[1] and which the bankruptcy court ultimately confirmed on September 7, 2004—incorporated the language contained in paragraph two of the parties' agreed order verbatim, save that it inserted "child" immediately in front of the word "support" in the two places that the word "support" appeared. Thus, the concluding sentence of the pertinent Chapter 13 plan language read as follows:

Creditor reserves the right to return to the Boone County Circuit Court in West Virginia after this bankruptcy action is concluded to litigate the issue of accrued interest on the *child* support arrears; Debtor reserves the right to assert defenses regarding the issue of accrued interest on the *child* support arrears.

(Emphasis added.)

---

[1]The record reflects that Mr. Burnett duly notified Ms. Burnett of her right to object to the plan.

On November 13, 2007, Mr. Burnett completed all of the non-support payments under his Chapter 13 plan, and the bankruptcy court discharged those debts accordingly. The bankruptcy court also issued an order finding that, as of that date, Burnett had paid $20,100.00 toward the $57,402.70 support arrearage. One month later, on December 13, 2007, BCSE—appearing on behalf of Ms. Burnett and as her subrogee—filed its "Motion to Determine Support Arrears and Motion for Judgment" in the Boone County Family Court ["family court"]. BCSE's motion recited the history of the antecedent bankruptcy proceedings, noting Ms. Burnett's reserved right in Mr. Burnett's plan to "return to the Boone County Circuit Court in West Virginia after completion of the bankruptcy to litigate the issue of accrued interest on the child support arrearage." Accordingly, BCSE prayed that the family court "determine the amount of interest on the arrears owed," that "[Ms. Burnett], as well as the State of West Virginia[,] be awarded a judgment against [Mr. Burnett] in the amount of *child* support arrears, including interest, found due" and that the family court "order collection from [Mr. Burnett] once the judgment is granted." (Emphasis added.)

On February 14, 2008, the family court held a hearing on BCSE's motion, and Mr. Burnett failed to appear despite receiving notice. BCSE appeared at the hearing along with Ms. Burnett, who appeared pro se. The family court proceeded with the hearing in Mr. Burnett's absence and, on March 7, 2008, issued an order awarding judgment to BCSE and Ms. Burnett. Specifically, as the BAP observed, the family court, "[w]ithout explanation," allocated "the entire $750.00 monthly obligation" originally ordered in the 1983 divorce proceedings, "to child support until May of 1989 (when the child reached age 18)" and, "[a]fter that date," factored into its calculations "an ongoing obligation of $375.00 per month for spousal support." Based on these calculations, the family court found that Mr. Burnett owed a principal arrearage of $11,348.45 for child support, plus $76,956.53 interest accrued thereon from December 1, 1983, to December 31, 2007.

Additionally, the family court found that Mr. Burnett owed a principal arrearage of $52,215.13 to Ms. Burnett for *spousal* support, plus $55,452.50 interest accrued thereon for the same time period. The family court included BCSE's accounting as an exhibit to its final order to support these calculations. Finally, the family court found "that based upon the evidence presented, it is uncontroverted that [Mr. Burnett] is in arrears in the payment of his child support and spousal support obligations" and consequently awarded judgment in the amounts mentioned and ordered that income withholding commence immediately. In accordance with this order, BCSE initiated a $703.45 monthly withholding from Mr. Burnett's military pension.

On April 17, 2008, Mr. Burnett, moved to reopen his Chapter 13 bankruptcy case in order to file a motion for contempt against BCSE and Ms. Burnett. He declined to appeal the family court's order directly. In his motion to reopen, Mr. Burnett alleged that BCSE and Ms. Burnett "not only . . . obtained a determination of interest that added $21,000.00 to the child support debt," but also "added a judgment for *spousal* support in the amount of $106,667.63" and "initiated a garnishment against [Mr. Burnett's] income for an amount in excess of the $300.00 per month as provided in the confirmed plan." The bankruptcy court granted Mr. Burnett's motion and reopened the case to consider Mr. Burnett's motion for contempt, as well as BCSE's and Ms. Burnett's response thereto.

On January 15, 2009, the bankruptcy court issued its "Order on Motion for Contempt," granting in part and denying in part Mr. Burnett's motion. Specifically, the bankruptcy court refused to hold BCSE and Ms. Burnett in contempt but did conclude that the family court's income-withholding order contravened the confirmed bankruptcy plan in that it exceeded the $300.00-per-month repayment schedule that the plan provided for. Accordingly, the bankruptcy court ordered that the withholding cease immediately and any amounts withheld in excess of the $300.00-per-month schedule be refunded to Mr. Burnett. Finally, the bankruptcy court ordered that Mr. Burnett "continue to pay the sum of $300.00 per month in accordance with the

confirmed plan until the child support arrears, spousal support arrears, and interest thereon are all paid in full." BCSE and Ms. Burnett unsuccessfully moved the bankruptcy court to reconsider its ruling and subsequently appealed to the BAP.

On July 7, 2009, the BAP reversed the bankruptcy court's ruling. Specifically, the BAP found that, despite the confirmed plan's express designation of the outstanding $57,402.70 arrearage as "child" support, "[t]he calculations presented [to the family court by BCSE] reveal that the arrearage amount of $57,402.70 used in the bankruptcy plan was equal to the principal amount of child support *and* spousal support past due as of January of 2001, not including interest." (Emphasis added.) In other words, although the confirmed plan classified the $57,402.70 as child support arrearage, the amount of that arrearage that BCSE and Ms. Burnett claimed in bankruptcy actually constituted a combination of back child and spousal support. Moreover, the BAP found that, "[w]ithout explanation," the family court allocated "the entire $750.00 monthly obligation . . . to child support until May of 1989 (when the child reached age 18)" and that "[a]fter that date, an ongoing obligation of $375.00 per month for spousal support was factored into the calculations." In making this observation, the BAP footnoted that

> [i]t is unclear how BCSE and the [family] court reached the conclusion that there was an ongoing spousal support/alimony obligation when the underlying order entered in 1983 only provided for "child support and alimony until the child reaches the age of eighteen." The child reached 18 years of age on May 24, 1989. The Family Court of Boone County apparently determined that while the child support portion of the obligation ceased on that date, the spousal support obligation continued at the rate of $375.00 per month [one-half of the original $750.00 monthly obligation]. In any event, Debtor did not appeal that order.

The BAP resolved that "the ultimate issue to be decided is whether the confirmed plan prevents Ms. Burnett from collecting more than $300.00 per month on *any obligation* Debtor may owe to her" and "conclude[d] that Ms. Burnett's right

to collect accrued interest and to be paid any post-petition domestic support obligations were not limited by the confirmed plan." (Emphasis added.) In reaching this conclusion, the BAP noted that Mr. Burnett's "plan only dealt with the principal amount of the support arrearage claim held by Ms. Burnett as of the date of the bankruptcy filing" and "specifically did not address any claim which was awarded post-petition, namely, the interest due to Ms. Burnett."

Mr. Burnett timely appealed the BAP's ruling.

## II. *Discussion*

On appeal, Mr. Burnett contends that the confirmed plan's plain language authorized Ms. Burnett to return to family court for the sole purpose of litigating accrued interest on pre-petition *child* support, not to seek additional recovery of pre- and post-petition *spousal* support. In response, Ms. Burnett asserts that the confirmed plan "impermissibly modified" paragraph two of the parties' agreed order to "state that [Ms. Burnett] could return to the state court of West Virginia[] to only litigate the issue of interest on CHILD SUPPORT arrearage[]." Ms. Burnett urges that Mr. Burnett's "impermissibly modified" plan cannot alter her rights under the agreed order or the Bankruptcy Code. "We review under the same standards used by the Bankruptcy Appellate Panel, which means we review the bankruptcy court's factual findings for clear error and its legal conclusions de novo." *Peltz v. Edward C. Vancil, Inc.* (*In re Bridge Info. Sys., Inc.*), 474 F.3d 1063, 1066 (8th Cir. 2007).

Ms. Burnett's claims for child and spousal support, as well as interest thereon, are classified under the Bankruptcy Code as "domestic support obligations." *See* 11 U.S.C. § 101(14A) (defining "domestic support obligation"). The Code treats domestic support obligations favorably. Most notably, the Bankruptcy Code excepts them from discharge, 11 U.S.C. § 523(a)(5), and Chapter 13 provides that a debtor's repayment "plan . . . shall provide for the full payment, in deferred cash payments, of all [domestic support obligations], *unless the holder of a particular claim agrees to*

*a different treatment of such claim*," *id.* § 1322(a)(2) (emphasis added). Mr. Burnett argues that his confirmed plan explicitly authorized Ms. Burnett to return to family court *only* to litigate the accrued interest on her pre-petition child support claims, *not* the accrued interest on her spousal support or, for that matter, her pre- and post-petition spousal support principal. In this vein, Mr. Burnett relies on § 1322(a)(2)'s language and asserts that, by failing to object to the plan, Ms. Burnett "agreed to a different treatment" of her domestic support obligation, notwithstanding that paragraph two of the parties' agreed order provided differently.

Upon review, we conclude that Mr. Burnett is correct, but we do so based on § 1327(a), *not* § 1322(a)(2). Moreover, § 1327(a) inhibits Ms. Burnett only from seeking interest on her pre-petition spousal support. Section 1327 governs the "Effect of confirmation," and subsection (a) thereunder provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

Our court has never directly addressed the interplay between §§ 1322(a)(2) and 1327(a). *See In re Mammel*, 221 B.R. 238, 240 (Bankr. N.D. Iowa 1998) (noting that Eighth Circuit has not ruled on § 1327's effect on an improvidently-confirmed plan). However, the Northern District of Iowa has done so in a very similar context. In *In re Northrup*, the district court considered a debtor's appeal from a bankruptcy court's denial of confirmation of a proposed Chapter 13 plan. 141 B.R. 171, 171 (N.D. Iowa 1991). In that appeal to the district court, the creditor-appellees were state and federal tax-enforcement agencies that held tax claims which, like Ms. Burnett's, are non-dischargeable in bankruptcy.[2] *Id.* Nevertheless, the plan that the debtor proposed in

_____

[2]As with Ms. Burnett's claim for domestic support obligations, the Bankruptcy Code mandates that all repayment plans provide for the full repayment of certain tax

*Northrup* neglected to provide for full repayment, and there, as here, the creditors failed to object. *Id.* at 172. But, unlike the present case, the bankruptcy court in *Northrup* exercised its "independent duty to review proposed Chapter 13 plans for compliance with Title 11" and refused to confirm the plan. *Id.* On appeal, the debtor maintained that, by failing to object, the creditors tacitly "agree[d] to a different treatment" of the underlying tax obligations, and that, consequently, per § 1322(a)(2), its plan should be confirmed. *Id.* The district court recognized that "[r]esolution of this matter turns on the interpretation of the word 'agrees' in 11 U.S.C. § 1322(a)(2)" and queried, "[d]oes the failure to file a written objection constitute agreement or is an affirmative act of acceptance of the plan required?" *Id.* In affirming the bankruptcy court's refusal to confirm, the district court stated "that an express affirmation of consent is required to meet the requirements of 11 U.S.C. § 1322(a)(2)" but made clear that § 1322(a)(2) applies only to cases like *Northrup*, where a debtor's plan has *not yet been confirmed. Id.* at 173. As the district court clarified, the bankruptcy court, pre-confirmation, continues to bear its "independent duty to assure compliance with Title 11, even if no objection is lodged." *Id.*; *accord In re Mammel*, 221 B.R. at 239 ("[W]hether or not an objection is presently lodged in this case, the Court retains the authority to review this plan and deny confirmation if it fails to comply with the confirmation standards of the Code.").[3] However, the *Northrup* court recognized that, "if the plan is confirmed," then § 1327(a), governing the "Effect of confirmation," takes over and mandates that "'[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the

obligations. 11 U.S.C. § 523(a)(1).

[3]Indeed, in its recent opinion in *United States Aid Funds, Inc. v. Espinosa*, *see infra* n. 4, the Supreme Court cited approvingly to this very language in *In re Mammel* as support for the proposition that "the Code makes plain that bankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan" to the Code's requirements, 130 S. Ct. 1367, 1381 (2010), and that "[b]ankruptcy courts appear to be well aware of this statutory obligation," *id.*, n.15.

plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.'" 141 B.R. at 173 (quoting 11 U.S.C. § 1327(a)).

Thus, § 1322(a)(2) does not apply to this case because the bankruptcy court confirmed Mr. Burnett's plan. Now, post-confirmation, § 1327(a) affords the confirmed plan *res judicata* effect and bars Ms. Burnett's attempts in a collateral state-court proceeding to expand her entitlement to relief to include interest on her pre-petition *spousal* support. *See Harmon v. United States ex rel. Farmers Home Admin.*, 101 F.3d 574, 582 n.5 (8th Cir. 1996) (rejecting the notion "that res judicata, by which we mean claim preclusion, is irrelevant in bankruptcy cases," and noting accordingly that, "[i]f the government were . . . raising an argument that could have been decided during the confirmation hearing (e.g., that the Plan should not have been confirmed because it did not meet the Code's requirements), those arguments would be barred except on appeal of the confirmation order"). The plan explicitly limited Ms. Burnett's privilege to return to family court for the sole purpose of litigating *child*-support interest. Although the Bankruptcy Code provides that, to be confirmed, a plan must provide for the full payment of accrued interest on child *and* spousal support, 11 U.S.C. § 101(14A) (defining "domestic support obligation" to include "interest that accrues on that debt"), a confirmed plan is given *res judicata* effect *even when* it violates the Code. *See Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009) (stating that once certain injunctive orders incorporated into the confirmed plan of reorganization "became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the 'parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'") (quoting *Nevada v. United States*, 463 U.S. 110, 130 (1983)).[4]

---

[4]Recently, in *Espinosa*, *see supra* n.3, the Supreme Court—though not citing § 1327(a) directly—affirmed the binding effect of a confirmed Chapter 13 plan on a debtor's creditors, even when that plan contravenes the mandatory payment provisions

As for Ms. Burnett's remaining claims for post-petition child and spousal support, and interest thereon, the BAP correctly ruled that these claims are beyond the purview of Mr. Burnett's plan, and the Bankruptcy Court's jurisdiction. We find the Ninth Circuit's decision in *Foster v. Bradbury* (*In re Foster*), on which the BAP principally relied, persuasive. The Ninth Circuit "agree[d] with the weight of authority . . . that interest on nondischargeable child support obligations, like interest on nondischargeable tax debt, continues to accrue after a Chapter 13 petition is filed and is not dischargeable." 319 F.3d 495, 497 (9th Cir. 2003) (citing *In re Foross*, 242 B.R. 692, 693 (BAP 9th Cir. 1999); *In re Pitt*, 240 B.R. 908, 911 (Bankr. N.D. Cal. 1999); *In re Messinger*, 241 B.R. 697, 701 (Bankr. D. Idaho 1999)). As the Ninth Circuit observed, this makes sense because the Bankruptcy Code does not cognize "a claim for post-petition interest, e.g., post-petition interest on child support obligations," as it "is not part of the bankruptcy estate because such 'unmatured' interest was not part of the debt as of the date of the petition." *Id.* (citing 11 U.S.C. § 502(b)(2)). "Thus, a creditor cannot insist on including post-petition interest in a debtor's Chapter 13 plan."

---

of the Bankruptcy Code. 130 S. Ct. at 1376. In that case, the Court unanimously refused to find a confirmed Chapter 13 plan jurisdictionally "void" pursuant to Federal Rule of Civil Procedure 60(b)(4), and thereby exempt from the final-judgment rule, even though it erroneously discharged a debtor's partially paid student-loan debt without the requisite determination by the bankruptcy court of "undue hardship." *Id.* at 1380. Indeed, before weighing, and ultimately rejecting, creditors' claims that this plan defect rendered it jurisdictionally void, the Supreme Court affirmed that "[t]he Bankruptcy Court's order confirming Espinosa's proposed plan was a final judgment, from which United did not appeal." *Id.* at 1376 (internal citation omitted). "Ordinarily, 'the finality of [a] Bankruptcy Court's orders following the conclusion of direct review' would 'stan[d] in the way of challenging [their] enforceability.'" *Id.* (quoting *Travelers Indem. Co.*, 129 S. Ct. at 2198–99 (2009)). Moreover, in the decision that the *Espinosa* Court unanimously affirmed in pertinent part, the Ninth Circuit observed that the "Bankruptcy Code's finality provision comes into play . . . after the bankruptcy proceedings come to an end. A bankruptcy discharge order is a final judgment and, even without the special protection of section 1327(a), a final judgment cannot be ignored or set aside just because it was the result of an error." *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1199 (9th Cir. 2008).

*Id.* Moreover, "[t]he [C]ode does not specifically prohibit collection of post-petition interest after a debtor completes a confirmed Chapter 13 plan." *Id.* Accordingly, Ms. Burnett's claim for post-petition interest on her child and spousal support survives despite Mr. Burnett's plan. Therefore, the BCSE income-withholding order—to the extent it withheld monies for the payment of these obligations—may exceed the $300.00 monthly payment schedule provided for in Mr. Burnett's plan.

For similar reasons, Ms. Burnett's recovery of *post*-petition spousal and child support is permitted because they are *post*-petition domestic support obligations, for which the Bankruptcy Code allows no proof of claim. *See* 11 U.S.C. 502(b)(5) (disallowing any claim "to the extent that . . . such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5)," e.g., a domestic support obligation). The BAP recognized this as well, writing that "[t]o the extent Debtor had a continuing post-petition obligation to pay spousal support, the confirmed plan could not, and did not, affect that obligation."(Citing 11 U.S.C. §§ 502(b)(5) and 507(a)(1)(A).) Consequently, BCSE and Ms. Burnett are entitled to recover these post-petition domestic support obligations and, furthermore, are permitted to do so through income withholding that exceeds the monthly payments set out in Mr. Burnett's plan.

## III. *Conclusion*

Based on the foregoing, we affirm in part and reverse in part the BAP's order. Specifically, we reverse the BAP's ruling insofar as it awards Ms. Burnett interest on her pre-petition *spousal* support and remand to the bankruptcy court with instructions that it order the family court to deduct from its judgment any portion thereof that is attributable to the accrued interest on pre-petition *spousal* support. We affirm the remainder of the BAP's order.

———————————————