# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1665

_____

In re: Jonathan Michael Young, also known as Jon Young

*Debtor*

------------------------------

Jonathan Michael Young

v.

Kristalynn Young

------------------------------

Kathy A. Cruz

*Appellant*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: January 15, 2015
Filed: June 17, 2015

_____

Before LOKEN, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

The bankruptcy court[1] sanctioned attorney Kathy Cruz under Rule 9011 of the Federal Rules of Bankruptcy Procedure during her representation of a client, Jonathan Young. Cruz appeals the imposition of sanctions. For the reasons stated below, we affirm.

I

A

This case has a complicated history. In order to put this appeal in context, a brief overview of how domestic support obligations are treated under the United States Bankruptcy Code (Code) is warranted. Simply put, the Code provides preferential treatment to domestic support obligations. For example, past-due alimony, owed on the date of filing bankruptcy, may be paid through monthly Chapter 13 payments. The past-due prepetition alimony is given priority status, meaning it is paid out of the monthly payments before payment is made to general unsecured creditors. Further, after a debtor files a petition, alimony that accrues postpetition must be paid by a debtor as an ongoing expense. In order to get a Chapter 13 plan confirmed, the debtor must show he or she has the financial ability to pay postpetition alimony and that it is, in fact, being paid. Failure of a debtor to pay postpetition alimony is a reason for dismissal.

Young filed for bankruptcy shortly after he and his wife, Kristalynn Young (now "Stephens"), divorced. The divorce decree required Young to pay alimony. Young did not pay, and as a result, Stephens filed contempt proceedings against him in state court in arguable violation of a bankruptcy stay order.[2] Young responded by

---

[1] The Honorable Richard D. Taylor, Chief Judge, United States Bankruptcy Court for the Eastern and Western Districts of Arkansas.

[2] Young appealed the divorce decree, which was pending at the time he filed for bankruptcy. Before Stephens responded to the appeal, she filed a motion for relief

filing an adversary proceeding against Stephens in the bankruptcy court, alleging a violation of the stay.

In the Chapter 13 bankruptcy, including the adversary proceeding, attorney Cruz represented Young. During the course of this representation, she repeatedly mischaracterized past-due postpetition alimony obligations as past-due prepetition obligations. In addition, she falsely asserted Young was current on his alimony payments. Further, she represented to the bankruptcy court that Young would "continue" to make his alimony payments even though, up to that point, he had not been making any such payments. In reliance on these representations, the bankruptcy court confirmed a plan. After discovering Cruz's false statements and her inaccurate characterization of the alimony, the bankruptcy court entered a show-cause order and, eventually, sanctions against Cruz. Cruz appeals the sanctions.

B

On November 1, 2007, Young and Stephens finalized their divorce. The divorce decree required Young to pay $1,100 per month in alimony, $10,890 in attorney's fees, and $2,350 in restitution (mainly marital debts, including credit card debt). Shortly thereafter, a state court jailed Young for contempt, finding that he failed to pay his domestic support obligations. He was released from jail after his parents posted a $5,000 bond. Young appealed the divorce decree and the contempt ruling. On January 24, 2008, while his appeals were pending, Young filed a petition for relief under Chapter 7 of the Code. Young listed $13,240 in domestic support obligations owed as of the date of filing of the Chapter 7 petition. He also listed $1,100 in monthly alimony on Schedule J, which lists "Current Expenditures of Individual Debtor."

---

from the automatic stay in the bankruptcy court. With the parties' agreement, the bankruptcy court entered a stay order granting the motion for relief in June 2008.

Proceedings not relevant to this appeal ensued in the Chapter 7 bankruptcy, mainly over the issues of dischargeability of debts owed to Stephens and relief from the stay order. Cruz then entered her appearance for Young and converted his bankruptcy case to Chapter 13.[3]

The original Chapter 13 plan did not mention Stephens, even though Young's Schedule E listed prepetition obligations of $2,350 in restitution and $10,890 in attorney's fees and Young's Schedule J listed $1,100 per month in alimony as a postpetition obligation. Stephens objected to the original Chapter 13 plan because it did not address alimony, attorney's fees, or restitution and because it listed alimony as a Schedule J "expense" even though Young had not paid any alimony.

In September 2008, a state appellate court affirmed the divorce decree. Stephens then sent a letter to Young in October 2008. The October 2008 Letter detailed Young's alimony arrearages from October 2007 to October 2008 (most of which accrued after filing the Chapter 7 petition in January 2008). The October 2008 Letter stated that if Stephens did not receive assurances of payment, she would again file a petition for contempt against Young in state court.

In response to the October 2008 Letter, Cruz amended Young's Schedule E to include $9,300 in alimony as a § 507(a)(1) unsecured priority claim. Also, Cruz filed a "Modification of Chapter 13 Plan" (Modified Plan), which included the $9,300 in alimony as past-due priority debt. Cruz asserted that Young would "continue" to make his alimony payments to Stephens directly, even though Young had not made a single payment. The Modified Plan also noted that the restitution and attorney's fees from the divorce decree would be paid in full.

---

[3] Attorney Michael Sanders originally represented Young in his Chapter 7. Cruz, however, took over for the Chapter 13.

Because Stephens was dissatisfied with Young's response to her October 2008 Letter, she filed an objection to the Modified Plan in the bankruptcy court and a petition for contempt against Young in the state court. The state court held a contempt hearing in December 2008 and found Young in contempt for failure to pay alimony and attorney's fees.[4] The state court judge held the contempt order in abeyance, however, to allow Young to determine the effect of the bankruptcy court's stay order on the contempt proceedings.

The state court judge held another contempt hearing in March 2009. Young stated that he was making his disposable income payments to the trustee in the bankruptcy case and that Stephens would receive those funds once she filed a notice of claim. The state court judge sent Young to jail at the conclusion of the proceeding for failing to pay past-due alimony and attorney's fees. Although Young made monthly disposable income payments to the trustee, Young made no alimony payments (even though they were included in his Schedule J as a monthly expense).[5]

Stephens withdrew her objection to the Modified Plan in January 2009. The Chapter 13 trustee, however, filed objections to Young's plan in 2008 and 2009. The trustee stated Young "did not provide proof that [he] has paid all amounts required to be paid under a domestic support obligation." Because of the trustee's pending objections, the bankruptcy court did not confirm Young's plan.

After Cruz filed the Modified Plan in October 2008, she modified Young's plan two more times. In March 2009, Cruz filed a second modification (Second Modified Plan), which essentially made no changes to the plan. Cruz, however, filed an amended Schedule J, listing an $800 alimony expense. The Chapter 13 trustee

---

[4] Young appeared pro se in the contempt proceedings.

[5] Young's monthly disposable income payment was calculated after deducting the $1,100 monthly alimony payment.

renewed the previous objection that Young did not provide proof that he was paying his domestic support obligations and was current on his alimony. In March 2011, after receiving seventeen continuances, Cruz filed a third modification (Third Modified Plan). The Third Modified Plan did not change the payment terms but stated that Young "believes he is current on all domestic support obligations that were due after the filing of his chapter 13 plan." The statement satisfied the trustee, and the bankruptcy court entered an order confirming Young's plan in April 2011.

In December 2010, during a delay pending confirmation of the plan, Cruz filed an adversary proceeding on behalf of Young against Stephens, alleging that Stephens violated the bankruptcy's stay order by filing the petition for contempt in the state court. In the complaint, Cruz asserted that Stephens had not been paid because Stephens continued to object to confirmation of the plan and failed to file a proof of claim.

After the bankruptcy court held a trial in the adversary proceeding, it issued a decision on the merits and also set forth its basis for a separate Order to Appear and Show Cause (OSC). The OSC was directed at Young and Cruz.[6]

The bankruptcy court's OSC asked Cruz to address four areas of concern: first, why Cruz characterized the $9,300 of past-due postpetition alimony as "prepetition" in the Modified Plan; second, why Cruz amended Young's Schedule E to include past-due postpetition alimony and Young's Schedule J to include a monthly alimony expense of $1,100 (even though Young was not paying alimony); third, why Cruz stated that Young would "continue" to make alimony payments; and fourth, why Cruz filed the Third Modified Plan asserting that Young believed he was current on all postpetition domestic support obligations due after the Chapter 13 petition.

---

[6] The bankruptcy court eventually withdrew the OSC against Young.

After the bankruptcy court held a hearing on the OSC, it issued an order imposing sanctions against Cruz for three of the four items listed in the OSC.[7] First, the order imposing sanctions devoted substantial discussion to Cruz's characterization of postpetition alimony as prepetition in the Modified Plan. As the court noted, a debtor must continue to pay his or her postpetition alimony as an ongoing expense under the Code. "[F]ailure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition" is a basis for conversion or dismissal of the bankruptcy case. 11 U.S.C. § 1307(c)(11). Further, a debtor must certify that he has paid all of his postpetition alimony as a condition for discharge. 11 U.S.C. § 1328(a). The bankruptcy court concluded that Cruz characterized the postpetition alimony as prepetition in order to avoid a dismissal of the bankruptcy proceeding. The court based its finding on: (1) the timing and similarities between the October 2008 Letter and the Modified Plan and (2) Stephens's proof of claim.

In the October 2008 Letter, Stephens asserted that Young owed $14,300 in accrued alimony. Stephens deducted the $5,000 bond from $14,300 in alimony, which left a remaining alimony balance of $9,300. The bankruptcy court noted a substantial amount, if not all, of the $9,300 was *postpetition* alimony. Two days after Young received the October 2008 Letter, Cruz filed the Modified Plan, stating "the priority debt to [Stephens] in the amount of $9,300 for past due alimony shall be paid in full during the life of the plan with a pro-rata monthly payment and 0% interest." Even though this postpetition alimony was a domestic support obligation that first became payable after the date of the petition, Cruz listed it as a prepetition domestic support obligation.

---

[7] The court did not sanction Cruz for misrepresentations on the amended schedules E and J, finding that schedules were not subject to Rule 9011. In this appeal, we need not address whether schedules are subject to Rule 9011.

The bankruptcy court further supported its finding that Cruz intentionally characterized postpetition alimony as prepetition with Stephens's proof of claim. The original Chapter 13 plan, filed by Cruz in July 2008, did not account for past-due alimony Young owed to Stephens. As a result, Stephens filed a proof of claim in the amount of $25,840. Stephens did not itemize the $25,840; she listed the full amount as a lump sum for domestic support obligations under § 507(a)(1)(A). The parties later amended the amount to $21,440. The bankruptcy court astutely broke down the $21,440, demonstrating that Cruz knew about the past-due postpetition alimony and characterized it as past-due prepetition alimony.

Regarding the second issue identified in the order imposing sanctions (that Cruz stated Young would "continue" to make alimony payments), the bankruptcy court found Cruz asserted "[Young] shall *continue* to pay his current monthly alimony of $1,100.00 to [Stephens] direct." At the time, Young had not made any alimony payments. The bankruptcy court concluded Cruz intentionally used the term "continue" to mislead the court. The court described Cruz's deception as calculated and disingenuous because it was "designed to both foster the impression that [Young] had been routinely paying his postpetition alimony and abet the disguised treatment of postpetition alimony as prepetition priority debt."

Finally, in addressing the third reason for imposing sanctions, the bankruptcy court stated Cruz's most serious violation was her certification in the Third Modified Plan that Young believed he was current on all domestic support obligations due after the filing of his Chapter 13 plan. The bankruptcy court found this statement induced the trustee to withdraw its objection and caused the bankruptcy court to enter an order confirming Young's plan.

Based on the above analysis, the bankruptcy court concluded that Cruz had no basis in law or fact for her assertions. As a result, Cruz obtained an impermissible benefit for Young when the bankruptcy court confirmed Young's plan. The

- 8 -

bankruptcy court was "firmly convinced that Cruz knew exactly what she was doing in filing the self-fulfilling certification that, in effect, certified that postpetition alimony had been paid so a plan could be confirmed." Further, the bankruptcy court found "Cruz manipulated the Code, the court, and the bankruptcy system."

The bankruptcy court suspended Cruz from practice in the Arkansas bankruptcy courts for six months, fined her $1,000, and directed her to attend twelve hours of CLE on Chapter 13 bankruptcy within six months for violating Rule 9011. In addition, the bankruptcy court levied sanctions against Cruz for misrepresentations during the OSC hearing. Relying on 11 U.S.C. § 105 and the court's inherent power, the bankruptcy court imposed a six month suspension to run concurrently with the other six month suspension and a separate $1,000 fine. Cruz filed a motion to vacate, amend, or alter the order imposing sanctions, but the bankruptcy court denied her request. Cruz appealed to the Bankruptcy Appellate Panel.

The BAP affirmed in part and reversed in part. The BAP affirmed the bankruptcy court's finding that Cruz violated Rule 9011 and the sanctions imposed under Rule 9011. The BAP reversed the bankruptcy court's imposition of sanctions for misrepresentations that Cruz made at the OSC hearing because the bankruptcy court did not provide Cruz with notice and an opportunity to respond before imposing those sanctions. In effect, the BAP affirmed the initial six-month suspension but reversed the second.

After the BAP issued its judgment, the bankruptcy court imposed Cruz's six-month suspension pursuant to the Rule 9011 sanctions. Cruz appealed the imposition of the suspension to the BAP. The BAP granted a stay of the suspension pending this appeal. Cruz appeals the Rule 9011 sanctions to our Court.

## II

We review the imposition of Rule 9011 sanctions for an abuse of discretion. Briggs v. Labarge (In re Phillips), 433 F.3d 1068, 1071 (8th Cir. 2006). We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. Peltz v. Edward C. Vancil, Inc., (In re Bridge Info. Sys., Inc.), 474 F.3d 1063, 1066 (8th Cir. 2007).

Rule 9011 governs allegations and representations made in bankruptcy court. The language of Rule 9011 is almost identical to Fed. R. Civ. P. 11, and case law interpreting Rule 11 applies to Rule 9011 cases. Grunewaldt v. Mut. Life Ins. Co. (In re Coones Ranch, Inc.), 7 F.3d 740, 742 n. 4 (8th Cir. 1993). An attorney "must make a reasonable inquiry into whether there is a factual and legal basis for a claim before filing." In re Phillips, 433 F.3d at 1071. Rule 9011 is critical for the bankruptcy system to function because:

> The typical federal court disposes of hundreds of cases each year—a bankruptcy court disposes of thousands. It is not uncommon to see dozens of attorneys in a bankruptcy courtroom, presenting arguments and objections on a long list of cases, with rulings issuing at pace that makes a cattle auction appear leisurely. A bankruptcy court does not have the time district courts devote to a motion, to examine each petition, proof of claim, and objection; the bankruptcy judge must rely on counsel to act in good faith. The potential for mischief to be caused by an attorney who is willing to skirt ethical obligations and procedural rules is enormous.

In re Armstrong, 487 B.R. 764, 774 (E.D. Tex. 2012).[8]

---

[8] Rule 9011(b) states:

Representations to the court

We conclude that the bankruptcy court's findings were supported by ample evidence in the record. Cruz had no basis in law or fact for characterizing the postpetition alimony as prepetition, asserting Young would continue to make alimony payments, and certifying Young was current on his postpetition domestic support obligations. The bankruptcy court astutely analyzed and deciphered Cruz's actions. Its reasoning and logical inferences are convincing, supported by the record, and most certainly not an abuse of discretion.

As discussed above, Cruz's actions demonstrate that she knew about the past-due postpetition alimony and tried to it conceal from the bankruptcy court. Unfortunately, Cruz's transgressions were successful; the bankruptcy court confirmed Young's plan, even though Young was not current on his postpetition domestic support obligations.

---

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).

The Code provides special protection for domestic support obligations. See 11 U.S.C. § 1307(c) ("[T]he court may . . . dismiss a case under this chapter . . . for cause, including . . . (11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition."); 11 U.S.C. § 1328(a) ("[I]n the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification . . . have been paid . . . the court shall grant the debtor a discharge of all debts provided for by the plan."); Burnett v. Burnett (In re Burnett), 646 F.3d 575, 580 (8th Cir. 2011); Smith v. Pritchett (In re Smith), 586 F.3d 69, 73 (1st Cir. 2009). A debtor must continue to pay postpetition domestic support obligations (e.g., alimony payments) to obtain confirmation of a plan. 11 U.S.C. § 1325(a) ("[T]he court shall confirm a plan if . . . (8) the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation.").

With respect to Cruz's assertion that Young would continue to make his alimony payments, Cruz first argues that Young's father paid Stephens $14,000, separate from the $5,000 bond. She also blames Stephens because Stephens "used unilateral accounting methods" to apply the $14,000 to debts owed to her by Young. Cruz's arguments are without merit and fail to address her false assertion. Cruz alleged that "[Young] shall *continue* to pay his current monthly alimony." Even assuming the father's alleged $14,000 payment was for alimony, Young paid no *monthly alimony*. Therefore, the word "continue" was misleading. The bankruptcy court did not err by finding that Cruz's misstatement was intentional and deliberate.

Cruz was aware Young was not making his postpetition alimony payments. Cruz states in her brief that she "has never denied that she knew . . . at times during the bankruptcy that Young was in arrears in his postpetition DSO." This admitted

knowledge is inconsistent with her separate assertion that Young would "continue" to pay alimony. The duty imposed by Rule 9011 requires an attorney to "stop, think and investigate more carefully before . . . filing papers" with the court or making assertions in those papers. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 398 (1990) (internal quotation marks omitted).

With respect to the characterization of postpetition alimony as prepetition alimony, Cruz argues that even if the Third Modified Plan was confirmed with past-due postpetition alimony, she had a basis in law for asserting that the postpetition debt could have been paid through the plan. She argues that postpetition alimony could be included in the plan because 11 U.S.C. § 1322(b)(3-5)[9] permits certain other postpetition defaults to be included within a plan. Cruz's argument is closed off because 11 U.S.C. § 1325(a)(8) requires a debtor to certify that his past-due postpetition domestic support obligations have been paid before a bankruptcy court can confirm his plan.[10]

---

[9] 11 U.S.C. § 1322(b)(3-5) states:

> (b) Subject to subsections (a) and (c) of this section, the plan may– . . .
> (3) provide for the curing or waiving of any default;
> (4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . . .

[10] In addition, Cruz argues that two cases read together—Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle), 12 F.3d 1008 (11th Cir. 1994) and In re Burnett, 646 F.3d 575—support her theory that postpetition alimony can be paid through the plan. As discussed, postpetition alimony cannot be paid through the plan.

- 13 -

Finally, Cruz does not directly address the bankruptcy court's findings regarding the false certification that Young "believe[d] he [was] current on all domestic support obligations that were due after the filing date of his chapter 13 plan." As mentioned above, a prerequisite of confirmation is that a debtor must have paid all of his postpetition domestic support obligations. The bankruptcy court correctly found that Cruz had no basis in law or fact for the certification. The court, in effect, concluded that Cruz carefully crafted this certification to trick the trustee into withdrawing its objection. We find no clear error in this finding. Rule 9011 required Cruz to "make a reasonable inquiry into whether . . . a factual and legal basis" supported the certification. See In re Phillips, 433 F.3d at 1071.

Based on the totality of the record, the bankruptcy did not err when it found that Cruz intentionally made misrepresentations to the court. There is substantial evidence to support the bankruptcy court's findings. Rule 9011 requires an attorney to conduct a reasonable investigation into the facts. Cooter & Gell, 496 U.S. at 398. "The 'pure-heart-and-empty-head' defense is not available to anyone faced with Rule 9011 sanctions." In re Rivera, 342 B.R. 435, 460 (Bankr. D.N.J. 2006). This is because "[t]he potential for mischief to be caused by an attorney who is willing to skirt ethical obligations and procedural rules is enormous." Armstrong, 487 B.R. at 774. We find the bankruptcy court was well within its power to sanction Cruz pursuant to Rule 9011.

III

Cruz also challenges the severity of the sanctions. We review the sanctions imposed for an abuse of discretion. See Walton v. LaBarge (In re Clark), 223 F.3d 859, 862 (8th Cir. 2000). "A sanction imposed for violation of [Rule 9011] shall be

---

See 11 U.S.C. § 1325(a)(8).

- 14 -

limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  Fed. R. Bankr. P. 9011(c)(2).

Although the sanctions in this case are serious, particularly if the bulk of Cruz's practice is in bankruptcy court, they are supported by substantial evidence and are limited to what is sufficient to deter repetition of comparable conduct.  The bankruptcy court specifically described the conduct it considered sanctionable in a detailed opinion that articulated the severity of Cruz's deception.  Based on the evidence presented, Cruz's actions were not mistakes.  Rather, as discussed above, Cruz knew that the bankruptcy court would not confirm a plan if past-due postpetition alimony was not paid.  When reviewing Rule 9011 sanctions, deference should be accorded to the determinations and findings "of courts on the front lines of litigation." See Nett v. Manty (In re Yehud-Monosson USA, Inc.), 472 B.R. 795, 807 (D. Minn. 2012) (citation omitted).

## IV

Next, Cruz argues that Rule 9011 does not authorize a bankruptcy court to suspend an attorney from the practice of law.  She asserts that the bankruptcy court, as a unit of the district court, must follow the district court's rules for suspending an attorney.  She cites to 28 U.S.C. § 151 in support.  Section 151 states:

> In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district.  Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, *except as otherwise provided by law or by rule or order of the district court.*

(emphasis added). Cruz argues that because a bankruptcy court is a "unit" of the district court, the bankruptcy court must follow the district court's rules for suspending an attorney.

Cruz ignores the last part of the statute: *except as otherwise provided by law or by rule or order of the district court.* The U.S. District Court for the Eastern District of Arkansas and the U.S. District Court for the Western District of Arkansas adopted a local rule that allows bankruptcy courts to suspend attorneys from the practice in those bankruptcy courts:

> The standard of professional conduct for attorneys practicing in this Court is governed by the Arkansas Rules of Professional Conduct and Federal Rule of Bankruptcy Procedure 9011. The Court will refer violations of the Arkansas Rules of Professional Conduct to the Arkansas Committee on Professional Conduct for such actions and sanctions as the Committee deems appropriate. Additionally, the Court shall have such authority and discretion as are permitted by and under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, statutory and common law, and the express and inherent powers conferred upon them. *Sanctions may include suspension or disbarment from the practice before this Court.*

Bankr. Ark. Local R. 2090-2 (emphasis added).

The bankruptcy court possessed authority under Rule 9011 and Local Rule 2090-2 to suspend Cruz from the practice of law in the Arkansas bankruptcy courts. Further, Rule 9011(c) specifically states:

> If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed. R. Bankr. P. 9011(c).  Such a sanction "is limited to what is sufficient to deter repetition of such conduct."  Rule 9011(c)(2).  The sanction may be of "nonmonetary nature."  Id.  Thus, the bankruptcy court had the power to suspend Cruz from the practice of law.

V

The bankruptcy court's imposition of Rule 9011 sanctions is affirmed.

_____